BAYER *v.* JACKSON CITY BANK & TRUST COMPANY.

1. CHATTEL MORTGAGES—FILING—SUBSEQUENT PURCHASERS—CONSTRUCTIVE NOTICE.

A chattel mortgage, duly filed in the office of the register of deeds, is valid as against subsequent purchasers without actual notice of the mortgage, since they were charged with constructive notice (CL 1948, § 566.140).

2. AUTOMOBILES—CERTIFICATE OF TITLE—DELIVERY TO TRANSFEREE.

Noncompliance by seller of motor vehicle with provisions of statute as to delivery of an indorsed certificate of title to transferee of car *held,* to render the transaction void, where statute impresses a penalty for such failure (PA 1949, No 300, §§ 233, 235, 239).

3. SAME—TRANSFER OF TITLE—DELIVERY OF ASSIGNMENT OF CERTIFICATE OF TITLE.

Title to a motor vehicle passes from the seller to the purchaser when the former delivers to the latter assignment of certificate of title and not before (PA 1949, No 300, § 233).

4. SAME—SALES—STATUTES—NOTICE.

Purchasers of motor vehicles are charged with knowledge of the pertinent statutes pertaining to the sale of such vehicles (PA 1949, No 300, §§ 233, 235).

5. SPECIFIC PERFORMANCE—CONTRACTS FOR PURCHASE OF PERSONALTY.

Courts will not specifically enforce contracts for the purchase of personal property except when there was some sentimental value to it, or where like property could not be easily purchased in the market.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 10 Am Jur, Chattel Mortgages § 114.
[2–4] 46 Am Jur, Sales § 35.
[4] 39 Am Jur, Notice and Notices § 25.
[5, 7, 8] 49 Am Jur, Specific Performance §§ 125, 126.
[6] 50 Am Jur, Statutes §§ 458–461.
[7, 8] As to written instruments generally, see 49 Am Jur, Specific Performance § 91.

6. COURTS—PRECEDENTS—CONSTRUCTION OF STATUTES.

Decisions from other jurisdictions based on the language of statutes that differ from the law of this State are not of controlling significance, especially where there have been decisions of the State Supreme Court upon comparable statutes.

7. SPECIFIC PERFORMANCE—CONTRACT TO DELIVER CERTIFICATE OF TITLE TO MOTOR VEHICLE.

A court of equity is without power to decree specific performance of a dealer's promise to complete transaction by delivery of a certificate of title to a motor vehicle.

8. APPEAL AND ERROR—PREJUDICE—ADEQUACY OF REMEDY AT LAW.

Bill to compel specific performance of bankrupt automobile dealer's promise to deliver certificate of title to automobile is ordered dismissed without prejudice to plaintiffs' rights at law, where the automobile was subject to duly-filed chattel mortgage and mortgagee had possession of title (CL 1948, § 566.140; PA 1949, No 300, §§ 233, 235, 239).

Appeal from Jackson; Rathbun (G. Arthur), J., presiding. Submitted October 17, 1952. (Docket No. 98, Calendar No. 45,331.) Decided December 9, 1952.

Bill by Andrew W. Bayer and wife against Jackson City Bank & Trust Company and Benjamin J. Glasgow, trustee in bankruptcy for W. C. Artz, to compel delivery of certificate of title. Decree for plaintiffs. Defendants appeal. Reversed and bill dismissed.

*Dudley & Rogers* and *Harry F. Layher,* for plaintiffs.

*John S. Denton,* for defendant Jackson City Bank & Trust Company.

*Luther A. Pahl,* for defendant trustee in bankruptcy.

CARR, J. The material facts in this case are not in dispute. In June, 1950, the defendant W. C. Artz

was engaged in business at Munith, Michigan, in connection with which he purchased and sold used automobiles. He was the owner of a certain Ford car which the plaintiffs sought to purchase from him. The negotiations on behalf of Artz were conducted by his employee Clarence Sloan. An agreement was reached in accordance with which plaintiff Andrew W. Bayer paid the sum of $583 in cash and transferred to Artz the possession and title of a Ford station wagon at an agreed valuation of $500. Possession of the car was given plaintiffs.

There was some conversation between the parties with reference to the certificate of title of the Ford car, and plaintiffs were told by Sloan that it would be forwarded to them within a few days. Such promise was not fulfilled, and on further inquiry Mr. Bayer was informed that the title had been sent to Lansing for transfer. Such statement was not correct and the certificate of title, which Artz had received from the prior owners of the automobile at the time of his purchase from them, was never delivered or assigned to the plaintiffs.

At the time of the negotiations for the purchase of the automobile by plaintiffs the defendant Jackson City Bank & Trust Company held a chattel mortgage on the car and on other vehicles to secure the repayment of a promissory note in the sum of $3,251.98, given by Artz to the bank. The instrument was duly filed in the office of the register of deeds of the county on the 3d of June, 1950. It was, in consequence, a matter of public record at the time plaintiffs sought to purchase the car. They had no actual knowledge of it, but it is not disputed that they were charged with constructive notice.* See *Jackson City Bank & Trust Company* v. *Blair*, 333 Mich 399. However, the mortgage permitted Artz to sell the vehicles de-

---

* See CL 1948, § 566.140 (Stat Ann § 26.929).—REPORTER.

scribed in it, charging him with the duty of accounting for and paying to the mortgagee the proceeds of each such sale. The clause in question read as follows:

"Dealer shall not lend, rent, mortgage, pledge, encumber, operate, use or demonstrate said merchandise, but shall keep it properly housed and free from all claims for taxes, liens or other encumbrances. Dealer shall be responsible for all loss of or damage to said merchandise. Dealer may sell said merchandise at retail, in its regular course of business, for not less than the respective mortgage debts mentioned above. However, upon any sale by dealer, dealer shall forthwith account for and deliver the proceeds thereof to mortgagee, for application upon the mortgage debt in respect to the merchandise so sold, and, until such accounting and delivery, dealer shall hold the entire proceeds, in form as received in trust for mortgagee, separate and apart from dealer's own funds."

During the summer of 1950 representatives of the mortgagee discovered that Artz did not have the Ford automobile in his possession but they were unable to learn, either from Artz or his employee Sloan, what disposition had been made of it. In September following, bankruptcy proceedings were instituted, and on the 9th of October Artz was adjudicated a bankrupt. A trustee in bankruptcy, Benjamin J. Glasgow, was appointed on the following day. During the same month the mortgagee bank discovered that the automobile in question was in the possession of plaintiffs. Discussions were had between the parties, the bank insisting that it had a lien on the car under its mortgage and the plaintiffs declining to recognize the validity of such claim, taking the position that the certificate of title, properly indorsed, should be turned over to them free and clear of such lien.

Presumably at the time of the execution of the mortgage and pursuant to a verbal agreement between Artz and the mortgagee, the certificate of title which Artz had received was turned over to the bank. It is a matter of inference from the record that this method of procedure was followed in order to prevent the mortgagor from disposing of the car without protecting the bank in accordance with his agreement. Possession of the certificate has been retained by the bank. The record does not indicate that either Artz or anyone in his behalf sought to obtain it for delivery to plaintiffs.

On February 6, 1951, plaintiffs filed suit in equity in the circuit court against the Jackson City Bank & Trust Company and Artz as defendants, asking that the bank be enjoined during the pendency of the suit from attempting to foreclose its mortgage on the car, of which plaintiffs had possession, that said mortgage be set aside as to the automobile in question, and that defendants be required to deliver to plaintiffs the certificate of title of the vehicle, properly executed. By order of the court, plaintiffs consenting thereto, the trustee in bankruptcy was joined as a party defendant. Answers to the bill of complaint were filed by him and by the defendant bank. At the conclusion of plaintiffs' proofs on the trial a motion to dismiss the case was made and denied, and a decree was entered ordering defendants to deliver to the plaintiffs the certificate of title of the car, properly indorsed and free of any lien whatsoever. From such decree the trustee in bankruptcy and the mortgagee have appealed.

The principal question at issue in the case arises from the claim of the appellants that the transaction between Artz and the plaintiffs in June, 1950, was wholly void because of the failure to complete it by delivery of a certificate of title of the car. It is contended that, in consequence, the ownership of the

automobile and the right to its possession are vested in the trustee as an officer of the bankruptcy court, and representing in such capacity both Artz and his creditors. 8 CJS, p 606. Attention is directed to certain provisions of the present motor vehicle law of the State, PA 1949, No 300 (CL 1948, § 257.1 *et seq.* [Stat Ann 1952 Rev § 9.1801 *et seq.*]) and particularly to section 233 of said Act (CL 1948, § 257.-233 [Stat Ann 1952 Rev § 9.1933]) which reads as follows:

"(a) Whenever the owner of a registered vehicle transfers or assigns his title or interest thereto, the registration plates issued for such vehicle shall remain attached thereto.

"(b) The owner shall indorse upon the reverse side of the registration certificate issued for such vehicle the name and address of the transferee and the date of transfer and shall immediately forward such certificate to the department.

"(c) It is a misdemeanor for any person to fail or neglect to fulfill the provisions of paragraph (b) of this section.

"(d) The owner shall indorse on the back of the certificate of title an assignment thereof with warranty of title in the form printed thereon with a statement of all liens or encumbrances on said motor vehicle, sworn to before a notary public or some other person authorized by law to take acknowledgments, and deliver the same to the purchaser or transferee at the time of the delivery to him of such motor vehicle, which shall show the payment or satisfaction of any mortgage or lien as shown on the original title."

Section 235 (CL 1948, § 257.235 [Stat Ann 1952 Rev § 9.1935]) further provides:

"(a) When the transferee of a vehicle is a dealer who holds the same for resale and operates the same only for purposes incident to resale and displays thereon the registration plates issued for such vehicle

or when a transferee does not drive such vehicle or permit it to be driven upon the highways, except for demonstration purposes incident to a resale, the transferee shall not be required to obtain transfer of registration of such vehicle or forward the certificate of title to the department but such transferee shall retain and have in his immediate possession at all times such assigned certificate of title and upon transferring his title or interest to another person shall execute and acknowledge an assignment and warranty of title upon the certificate of title and deliver the same to the person to whom such transfer is made.

"(b) Said dealer or transferee, however, shall be liable for all damages arising from such operation."

The sections quoted do not in specific terms declare that the failure to execute and deliver a proper certificate of title on the sale of an automobile shall render the transaction void, but section 239 of the code (CL 1948, § 257.239 [Stat Ann 1952 Rev § 9.1939]) declares that:

"It is a misdemeanor for any person to fail or neglect to properly indorse and deliver a certificate of title to a transferee or owner lawfully entitled thereto."

The provision, above quoted, leaves no question as to the legislative intent. It has been repeatedly recognized in prior decisions of this Court that failure to comply in any transaction with statutory requirements, when noncompliance is declared unlawful and subject to penalty, renders the transaction void. Counsel in their briefs have referred to a number of such cases arising under the provisions of the prior motor vehicle law of the State (PA 1915, No 302, as amended [CL 1948, § 256.1 *et seq.* (Stat Ann and Stat Ann 1947 Cum Supp § 9.1431 *et seq.*)]).

In *Endres* v. *Mara-Rickenbacker Co.*, 243 Mich 5, it was said:

"By PA 1921, No 46 (CLS 1922, § 4832 [15]), it was a crime punishable by fine or imprisonment or both to sell a motor vehicle without complying with the provisions of section 3 above quoted from. The legislature provided penalty for such violation, fine or imprisonment or both. It did not expressly provide that the sale or transfer without such compliance be void or fraudulent. If the courts are to add such penalty, further than that specifically given by the legislature, it must clearly appear from the statute that the legislature so intended. See *Dunlop* v. *Mercer*, 86 CCA 435 (156 Fed 545), and 13 CJ, p 422. * * *

"In view of the purpose and language of the statute, we think it was the intent of the legislature that a sale or transfer of an automobile in violation of the provisions of the act should be void. It follows that in the case at bar there was not a sale to Pushkin, that as between him and the dealer, the dealer was the owner of the car (which ownership on this record the dealer may not question), that it was being driven with consent of the dealer at the time of the accident, and that it is liable."

Citing the above case and others, it was held in *Kimber* v. *Eding*, 262 Mich 670, 672:

"Under PA 1921, No 46, § 3 (CL 1929, § 4660), this Court consistently has held, in cases involving actions for negligent injuries as well as controversies between the immediate parties to a sale, that title to a motor vehicle passes from seller to purchaser when the former delivers to the latter assignment of certificate of title, and not before."

Many of the Michigan cases, as counsel for appellees emphasize, have involved the question of liability of an owner for negligence in the operation of an automobile on a public highway. *Ittleson* v. *Hagan*,

245 Mich 56, is of interest because of the factual situation involved. There the owner of a motor vehicle entered into a written contract with defendant Hagan for its sale. No certificate of title was delivered. Thereupon the owner, who had retained possession of the vehicle, sold it to defendant Chase. An assignee of Hagan's rights under the contract made by him brought replevin for possession of the car. The trial court determined the issue in favor of defendant Chase on the ground that the agreement between the owner and Hagan contained provisions that made it in practical effect a chattel mortgage and that, not being duly filed in accordance with the statute, it was void as to Chase. This Court affirmed, pointing out also that the Hagan contract was void because of the failure of the owner to comply with the statute requiring the delivery of an assigned certificate of title by the seller to the purchaser. Such question was not raised on the trial, however, and because of that fact the decision was not based thereon.

On behalf of the appellees it is insisted that many of the prior decisions cited by appellants may be differentiated from the instant controversy on the basis of the facts and issues involved. However, an analysis of the pertinent provisions of the Michigan vehicle code fails to indicate an intent on the part of the legislature to recognize exceptions to the general rule obviously contemplated thereby. A like comment may be made with reference to prior decisions of this Court. The following statement in *Taylor* v. *Burdick,* 320 Mich 25, 31, 32, is applicable here:

"It is apparent from the language of the statute above set forth that the legislature sought to cover every transaction involving the transfer of a motor vehicle from the owner to another, as well as transfer by operation of law. An intent to cover the situation fully is clearly manifested by the language used.

Obviously the purpose sought could not have been fully accomplished otherwise."

See, also, *Seppala v. Neal,* 323 Mich 697; *Fleckenstein* v. *Citizens' Mutual Automobile Insurance Company,* 326 Mich 591.

Plaintiffs were, of course, charged with knowledge of the statutes pertaining to the sale of motor vehicles. Furthermore, Mr. Bayer knew that to complete his purchase the delivery of a proper certificate of title to him was essential. The following excerpt from his testimony clearly indicates the situation in this regard:

"I bought a couple of cars before this one. At the first occasion a certificate of title was delivered to me for the automobile that I purchased. This present occasion, about which we are talking, I transferred a certificate of title to my Ford station wagon to Mr. Artz. I knew that that was required in the sale of an automobile. I knew at the time of the transaction in the case that Mr. Artz had to deliver me a certificate of title to the car that I purchased in order to acquire title to that car."

When Artz failed to keep his promise to deliver the certificate of title in accordance with his agreement, plaintiffs were charged with knowledge that the transaction was void. They might then have returned the car and have brought action at once to recover what they had paid. *Bos* v. *Holleman De Weerd Auto Co.,* 246 Mich 578; *Fullwood* v. *Catsman,* 329 Mich 120. Undoubtedly they believed that Artz would keep his word and cause a certificate of title to be delivered within a few days following the transaction on the 10th of June, 1950. Whether Artz was at that time insolvent does not appear. The practical situation now presented is that plaintiffs are asking a court of equity to enforce the carrying out of the promise made to them, thereby giving validity to

the transaction. In this connection the holding in *Gallagher* v. *Studebaker Corporation*, 236 Mich 195, is significant. There the plaintiff sought specific performance of a contract for the sale of an automobile to him by defendant. The decree of the trial court dismissing the bill of complaint was affirmed. The following statement in the opinion is applicable here under the facts presented on the record:

"It has not been the practice of this Court to enforce specifically contracts for the purchase of personal property except when there was some sentimental value to it, or where like property could not be easily purchased in the market, or for other particular reasons which are not material here. 25 RCL, p 293; *Cole* v. *Cole Realty Co.,* 169 Mich 347."

Counsel for plaintiffs have called attention to *Daas* v. *Contract Purchase Corporation,* 318 Mich. 348. In that case, as well as in the case with which it was consolidated, the plaintiff had purchased an automobile from a dealer who had given a properly filed floor plan chattel mortgage covering the vehicle in question and others. The certificate of title was left with the dealer, and no indorsement of the lien was made thereon. The result was that the dealer delivered to plaintiff Daas a certificate of title indicating the absence of any lien. Under such facts it was held that defendant was not entitled to enforce its lien against the car. There was involved no question as to the validity of the sale. The decision has no bearing on the controlling issues in the controversy now before us.

Appellees also cite and rely on the decision of the court of appeals for the District of Columbia in *Fogle* v. *General Credit, Inc.,* 74 App DC 208 (122 F2d 45, 136 ALR 814). An examination of the opinion in that case indicates that pertinent provisions of the statute involved were given an interpretation differing materially from that placed by this Court.

on analogous provisions of the Michigan statutes. The Court quoted with approval from *Associates Discount Corp.* v. *Hardesty,* 74 App DC 44 (122 F2d 18), as follows:

" 'The only sanction in the District of Columbia laws applicable under the conditions we have here, is that the purchaser cannot use the automobile on the highways of the District of Columbia. The statute provides only that the "owner" shall first obtain a certificate. But it nowhere provides that he is any less the owner because he fails to do so. In our opinion, the statute does not avoid a contract otherwise valid. Our conclusion, therefore, is that the sale to Hardesty gave him title to the car and that being so, that he has the right to possession of the certificate under the rule implicit in the *Crow Case.**' "

Decisions from other jurisdictions based on the language of statutes that differ from the Michigan law are obviously not of controlling significance. The prior decisions of this Court indicate the construction that must be placed on the Michigan vehicle code. In accordance therewith the conclusion cannot be avoided that there was no valid sale of the automobile to plaintiffs, and the court of equity is without power to decree specific performance of the promise to complete the transaction by delivery of a certificate of title. Plaintiffs must necessarily be left to their legal remedy.

A decree will enter in this Court dismissing the bill of complaint, but without prejudice to the rights of any of the parties to pursue such remedies at law as may be deemed appropriate. Appellants may have costs.

ADAMS, C. J., and DETHMERS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

---

* *Associates Discount Corp.* v. *Crow,* 71 App DC 336 (110 F2d 126). —REPORTER.