DART NATIONAL BANK *v.* MID-STATES CORPORATION.

1. Bills and Notes—Negotiable Instrument—Recitals.

An instrument whereby the maker unconditionally promised to pay a stated sum in instalments, specified in amount and time, is a negotiable instrument notwithstanding it contained a recital that it had been given as evidence of a balance of purchase price of property purchased under conditional sale contract on the same day (CL 1948, § 439.1 *et seq.*).

2. Same—Good-Faith Purchaser for Value—Uniform Trust Receipts Act.

The good-faith purchaser for value of a negotiable note, reciting that it was given as balance of purchase price of personal

References for Points in Headnotes

[1] 7 Am Jur, Bills and Notes § 174.
 Reference to consideration or origin of transaction as affecting negotiability of bill or note. 14 ALR 1129, 33 ALR 1174, 37 ALR 655, 61 ALR 817, 104 ALR 1382.
[2, 3, 5] 53 Am Jur, Trust Receipts, § 13.
 Trust receipts. 49 ALR 282, 87 ALR 302, 101 ALR 453, 168 ALR 359.
[4] 20 Am Jur, Evidence § 110.
[6] 8 Am Jur, Bills and Notes § 1043.

property, without knowledge of an entrustment arrangement under which the seller had possession of such property in trust, is accorded prior right to such property as security over the entruster, it having been represented by the trustee, seller of the note and property, that the property was free from all liens except that of the note maker, and the note purchase created a substitutionary entrustment and gave the purchaser of the note priority under the provisions of the uniform trust receipts act (CLS 1956, § 555.409, subds [1] [a], [b]).

3. SALES—CONDITIONAL SALE CONTRACT—UNIFORM TRUST RECEIPTS ACT.

A conditional sale contract is an "instrument," as that term is defined in the uniform trust receipts act, since it is a credit instrument marketed in the ordinary course of business or finance of which the trustee appears, by virtue of possession and the face of the instrument, to be the owner (CLS 1956, § 555.401).

4. EVIDENCE—JUDICIAL NOTICE—FINANCING RETAIL SALES.

The Supreme Court takes judicial notice of the fact that banks and finance companies finance the retail sales of new and used automobiles and trailers by purchasing from dealers the conditional sale contracts.

5. TRUSTS—UNIFORM TRUST RECEIPTS ACT—SUBSTITUTIONARY ENTRUSTMENT—CONDITIONAL SALE CONTRACT.

The verb "negotiates," as used in provision of the uniform trust receipts act relative to substitutionary entrustment of instruments "which the trustee *negotiates* to a purchaser in good faith and for value," applies to a conditional sale contract which is nonnegotiable as well as a negotiable promissory note (CLS 1956, § 555.409, subd [1] [b]).

6. BILLS AND NOTES—TRAILERS—BONA FIDE PURCHASER FOR VALUE—EVIDENCE—CERTIFICATE OF ORIGIN.

Plaintiff bank would not fail in its action to replevin personal property security because not a bona fide purchaser of property described, a new trailer financed by negotiable promissory note and conditional sale contract, by reason of the fact that it had not required the dealer to furnish a bill of sale, statutory certificate of title or certificate of origin, since a statutory certificate of title did not yet exist and the record does not indicate precisely what evidence of ownership the transferor had, but does indicate he warranted he held title (CLS 1956, §§ 257.216, 555.401 *et seq.*).

Appeal from Branch; Andrews (Mark S.), J. Submitted December 29, 1958. (Docket No. 78, Calendar No. 47,652.) Decided June 6, 1959.

Replevin by Dart National Bank, a banking corporation, against Mid-West Corporation, a foreign corporation, and others to obtain possession of house trailer financed on title-retaining contract without discharge of previously existing financing arrangement under uniform trust receipts act. Judgment for plaintiff. Defendants appeal. Affirmed.

*Sinas, Dramis, Brake & Werbelow (Lee C. Dramis,* of counsel), for plaintiff.

*Harold J. Ashdown,* for defendants.

Smith, J. The case before us involves an interpretation of the uniform trust receipts act.[1] The plaintiff, Dart National Bank of Mason, Michigan, sought possession, in a replevin action, of a certain house trailer, title to which it believed it held under an assignment of a conditional sales contract.

Defendant Mid-States Corporation, an Illinois corporation, owns some 7 trailer plants throughout the United States. Two of its subsidiary corporations are the Farmers & Merchants Investment Company, organized for the financing of the mobile homes manufactured by the parent's various plants, and Star Mobile Homes, a manufacturer of mobile homes in the village of Union City, Branch county, Michigan. One other corporation should be here mentioned, Milbourn Trailer Sales, Inc., of Jackson, Michigan. It was Milbourn's dishonesty that was at the root of the controversy before us, bringing 2 financiers, Farmers & Merchants Investment Com-

[1] CLS 1956, § 555.401 *et seq.* (Stat Ann 1957 Cum Supp § 19.535[1] *et seq.*).

pany (the "entruster" under the trust receipts act, *supra*) into conflict with the local financier, Dart National Bank (hereinafter referred to as the Dart bank).

Pursuant to section 13 of the uniform trusts receipts act (CLS 1956, § 555.413 [Stat Ann 1957 Cum Supp § 19.535(13)]), defendant Farmers & Merchants Investment Company as "entruster" and Milbourn Trailer Sales, Inc., as "trustee" had filed on November 29, 1956 a "Statement of Trust Receipt Financing" with the secretary of State. Subsequently, on January 21, 1957, the same parties executed a trust receipt covering the trailer in question and the trailer was delivered to the trustee's place of business "for the purpose of storing and exhibiting same preliminary to and in procuring the sale thereof." The trustee agreed "not to * * * sell, loan, pledge, mortgage or otherwise dispose of said property until payment of the above said amount."

However, on March 27, 1957 the trustee, without first discharging the trust receipt lien, sold the trailer to a Mr. and Mrs. Frank, who, for the purposes of this decision, we will assume to be good-faith purchasers in the ordinary course of trade. As payment, the Franks traded in their old trailer and executed a promissory note, secured by a conditional sales contract, for the balance. It appears from the record that the entruster would not have complained of the sale had the trustee turned over the proceeds. On the same day, the trustee negotiated and assigned the note and contract, respectively, to plaintiff bank. The trustee did not inform the entruster of these activities, nor remit any money. When, in early April, the entruster discovered the sale, defendant Dreschler, its agent, accompanied by W. H. Milbourn, induced the Franks to surrender possession of the trailer and their old trailer was returned to them. Rejecting the entruster's argument that the bank

acquired no interest in the trailer, the court below gave plaintiff the relief requested.

The rights of the entruster under the act, as far as pertinent to the situation before us, arise from section 10, subdivisions (a) and (c). (CLS 1956 § 555.410, subds [a] and [c] [Stat Ann 1957 Cum Supp § 19.535(10), subds (a) and (c)]) providing as follows:

"Where, under the terms of the trust receipt transaction, the trustee has no liberty of sale or other disposition, or, having liberty of sale or other disposition, is to account to the entruster for the proceeds of any disposition of the goods, documents or instruments, the entruster shall be entitled, to the extent to which and as against all classes of persons as to whom his security interest was valid at the time of disposition by the trustee, as follows:

"(a) To the debts described in section 9, subdivision (3); and also  *  *  *

"(c) To any other proceeds of the goods, documents or instruments which are identifiable, unless the provision for accounting has been waived by the entruster by words or conduct; and knowledge by the entruster of the existence of proceeds, without demand for accounting made within 10 days from such knowledge, shall be deemed such a waiver."

The "debts" described in section 9, subdivision (3)" (CLS 1956, § 555.409, subd [3] [Stat Ann 1957 Cum Supp § 19.535(9), subd (3)]) are as follows:

"As to all cases covered by this section the purchase of goods, documents or instruments on credit shall constitute a purchase for new value, but the entruster shall be entitled to any debt owing to the trustee and any security therefor, by reason of such purchase; except that the entruster's right shall be subject to any set-off or defense valid against the trustee and accruing before the purchaser has actual notice of the entruster's interest."

The bank's rights, in turn, it asserts, arise from sections 9; subds (1)(a) and (b) of the said act (CLS 1956, § 555.409, subds [1][a] and [b] [Stat Ann 1957 Cum Supp § 19.535(9), subds (1)(a) and (b)]), providing as follows:

"(1)(a) Nothing in this act shall limit the rights of purchasers in good faith and for value from the trustee of negotiable instruments or negotiable documents, and purchasers taking from the trustee for value, in good faith, and by transfer in the customary manner, instruments in such form as are by common practice purchased and sold as if negotiable, shall hold such instruments free of the entruster's interest; and filing under this act shall not be deemed to constitute notice of the entruster's interest to purchasers in good faith and for value of such documents or instruments, other than transferees in bulk.

"(b) The entrusting (directly, by agent, or through the intervention of a third person) of goods, documents or instruments by an entruster to a trustee, under a trust receipt transaction or a transaction falling within section 3 of this act, shall be equivalent to the like entrusting of any documents or instruments which the trustee may procure in substitution, or which represent the same goods or instruments or the proceeds thereof, and which the trustee negotiates to a purchaser in good faith and for value."

The issue before us, then, is whether the statutory protection afforded purchasers from the trustee by the above sections are applicable to the transaction before us so as to subordinate the entruster's rights to those of the Dart bank.

The Dart bank's claims with respect to the transaction turn upon its purchase of the note and contract hereinbefore described. There is no doubt that it was a purchaser for value, having executed and delivered its check for $2,945.26 to Milbourn Trailer Sales, which check Milbourn deposited in another

bank. Moreover, it was a purchaser in good faith. It had never done business with the trustee before and there is nothing in the record to charge it with actual knowledge that the trailer was subject to a trust-receipt transaction. It was not informed of such when the trustee indorsed over the note and assigned the contract. The entruster, however, points out that the bank failed to inquire of the trustee whether any liens were outstanding against the trailer. But such inquiry would have been fruitless, for the trustee had stated specifically in its assignment and warranty of the conditional sales contract that "the title to said trailer is now vested in the undersigned free of all liens and encumbrances except the interest of the within buyer."

The note itself, set out in part in the margin hereof[2] is negotiable in form, within the negotiable instruments law (CL 1948, § 439.1 *et seq.* [Stat Ann § 19.41 *et seq.*]). The fact that a recital in the note refers to a conditional sales contract as the occasion for its execution does not render the maker's promise to pay a conditional promise. See CL 1948, § 439.5 (Stat Ann § 19.45); 44 ALR2d 59-61. If anything, it enhances the transferability of the accompanying contract. Such note, we observe, is defined in the

---

[2] "NOTE

$4815.60

"6941      Mason      Michigan      March 25, 1957
        (City)       (State)        (Date)

"For value received, I(We), the undersigned, jointly and severally promise to pay to the order of Milbourn Trailer Sales, Inc., of Jackson, Mich.                 (Dealer)
(City) (State)
at the office of Dart National Bank of Mason (Mason, Michigan) the sum of Forty-Eight Hundred Fifteen & 60/100 Dollars in 60 monthly installments of $80.26 each, payable the same day of each month beginning April 25, 1957, the final installment to equal the total balance then remaining unpaid. This note is given as evidence of the balance of the purchase price of certain personal property purchased under conditional sales contract of even date herewith, executed by the maker hereof as buyer and by the payee hereof as seller."

act as an "instrument"[3] and it was received by the trustee, Milbourn, as part of the proceeds from the sale of the trailer entrusted by Farmers & Merchants to it. In this situation the statute, above quoted (see CLS 1956, § 555.409, subd [1][b] [Stat Ann 1957 Cum Supp § 19.535(9), subd (1) (b)]) creates a substitutionary entrustment of the note identical in terms with the entrustment of the trailer and, in addition, as above quoted, establishes in terms the bank's priority right thereto. (CLS 1956, § 555.409, subd [1][a] [Stat Ann 1957 Cum Supp § 19.535(9), subd (1)(a)]).

As to the contract itself, a similar problem is presented, although, unlike the negotiable instrument, the conditional sales contract is not referred to by name in the defining section. It seems clear, however, that it is an "instrument" within the definition thereof found in the act,[4] it providing, in further part, that the term instrument shall include any

---

3 CLS 1956, § 555.401 (Stat Ann 1957 Cum Supp § 19.535[1]).
"In this act, unless the context or subject matter otherwise requires: * * *
" 'Instrument' means
"(a) Any negotiable instrument as defined in the uniform negotiable instruments law and amendments thereto."

4 CLS 1956, § 555.401 (Stat Ann 1957 Cum Supp § 19.535[1]):
"(c) Any interim, deposit, or participation certificate or receipt, or other credit or investment instrument of a sort marketed in the ordinary course of business or finance, of which the trustee, after the trust receipt transaction, appears by virtue of possession and the face of the instrument to be the owner. 'Instrument' does not include any document of title to goods."

While "the ·document of title" is not defined in the act, it does not apply to a conditional sales contract, but rather, is meant to embrace bills of lading, warehouse receipts, and documents of a similar nature. Cf. uniform sales act, CL 1948, § 440.76, subd (1) (Stat Ann § 19.316, subd [1]):

" 'Document of title to goods' includes any bill of lading, dock warrant, warehouse receipt or order for the delivery of goods, or any other document used in the ordinary course of business in the sale or transfer of goods, as proof of the possession or control of the goods, or authorizing or purporting to authorize the possesser of the document to transfer or receive, either by indorsement or by delivery, goods represented by such document."

See, also, comment to Uniform Commercial Code, § 1-201(15), Am Law Inst, 1957 official text.

"credit * *˙ * instrument * * * marketed in the ordinary course of business or finance, of which the trustee, after the trust receipt transaction, appears by virtue of possession and the face of the instrument to be the owner." These requirements are here satisfied. The conditional sales contract is a credit instrument, it is of a sort marketed in the ordinary course of business or finance, and the trustee appears by virtue of possession and the face of the contract to be the owner thereof. Being thus an instrument as so defined in the act, the statute creates a substitutionary entrustment of the contract, as well as the note. See section 9, subdivision (1), paragraph (b) (CLS 1956, § 555.409, subd [1][b] [Stat Ann 1957 Cum Supp § 19.535(9), subd (1)(b)]), hereinabove quoted, the pertinent portion of which (with respect to the contract) is set forth in the margin hereof.[5]

The substitutionary trust of the contract having been thus created it remains to determine whether the statute subordinates, with respect to it (as well as to the note itself) the interests of the entruster to those of the purchaser. The pertinent conditions stated (CLS 1956, § 555.409, subd [1][a] [Stat Ann 1957 Cum Supp § 19.535(9), subd (1)(a)], quoted, *supra*) require a "transfer in the customary manner" of an instrument "in such form" as is "by common practice purchased and sold as if negotiable." Just as transfer in the customary manner of a negotiable instrument refers generally to indorsement and delivery, transfer in the customary manner of an instrument "as if negotiable" refers to assignment

---

[5] "(b) The entrusting * * * of * * * instruments * * * shall be equivalent to the like entrusting of any documents or instruments which the trustee may procure in substitution, or which represent the same goods or instruments or the proceeds thereof, and which the trustee negotiates to a purchaser in good faith and for value."

The structure of the act makes it clear that the term *negotiates*, as here employed, is not a term of art but applies to any instruments procured in substitution, whether negotiable or nonnegotiable.

and delivery,[6] both of which are found here.   The requirement of purchase and sale, in such form and by common practice as if negotiable, of such conditional sales contracts, is a characteristic of our modern financing of automobiles.   The emphasis here is upon the common practice and not upon the appearances of negotiability.   The California court phrased the matter thus in *Citizens National Trust & Savings Bank of Los Angeles* v. *Beverly Finance Co.,* 127 Cal App 2d 835, 841 (273 P2d 714):

"The practice of banks and finance companies of financing the retail sales of new and used automobiles in the manner followed here, and whereby the financing institution acquires by purchase from the dealer the conditional sales contract, is so general as to constitute a matter of general knowledge of which this court may take judicial notice, and, as a consequence, it is equally apparent that such contracts 'are by common practice purchased and sold as if negotiable.'"

This is particularly true where, as in the case before us, a negotiable note accompanies the contract.[7]

We conclude, therefore, that the conditional sales contract is included within the above phraseology of section 9(1)(a)[8] and that the Dart bank, plaintiff

---

[6] *Cf.* Gilmore, *The Commercial Doctrine of Good Faith Purchase,* 63 Yale L J 1057, 1103.

[7] See Skilton, Cars for Sale (Automobile Financing), 1957 Wis L Rev 352, 416, 417, 424.

[8] The draftsman of the act, in explaining the use of the term "instruments in such form as to be negotiable by the borrower, or such form as by common practice are purchased and sold as if negotiable" stated that the clause was "an attempt to give protection, in the type of transaction, to the purchase of investment instruments which are in fact freely dealt with on the market, without too close regard to whether a particular court would hold one or some of such instruments to be nonnegotiable.   See definition of 'instrument.'"

As to such definition of "instrument," here referred to, the draftsman states as follows in section 1: "The attempt is here made to include under 'instrument' those instruments which are in fact dealt with on the investment market, without too close regard to whether a particular court may hold any of them to fall outside the negotiable

herein, took both the note and the contract free of the interest of the entruster. Such conclusion, we note, accords with the basic policy embodied in the uniform trust receipts act before us. The national conference of commissioners on uniform state laws, in its prefatory notes explaining the purposes and structure of the act, stated as follows:[9]

"B. General theory of the act. * * *

"(2) The act proceeds on the theory that the entruster in such case is entitled to protection only against honest insolvency of the trustee. Dishonest action of the trustee is a credit risk, and bona fide purchasers are to be protected against the entruster who has taken that risk by entrusting."

Appellant argues, finally, that "the plaintiff is not a bona fide purchaser of the property described in the writ of replevin issued in the above entitled cause, for the reason that:

"3. * * * He (Mr. Carter, an official of plaintiff bank) did not request the said Milbourn Trailer Sales, Inc., to produce a certificate of title, or certificate of origin, for said mobile home, contrary to the statutes of the State of Michigan, being * * *

---

instruments law." Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings, 1926, pp 404 and 400, respectively.

[9] See 9C Uniform Laws Annotated, p 224. See, also, report of committee on uniform trust receipts act to the national conference of commissioners on uniform state laws with respect to the seventh (and final) draft of the act.

"The basic theory of the act still rests on these propositions: * * *

"(2) That the trust receipt is not adapted to displacing the chattel mortgage as a device to give security against the borrower's *dishonesty;* but that *the lender who lends on trust receipt assumes all risk of the borrower's dishonesty or fraud.* The security to be offered is security against the borrower's *honest insolvency.* Within this limit, the act as proposed makes every concession to the lender. None of the concessions made goes beyond this limit; and thereby the adequate protection of purchasers and other creditors of the borrower is assured." (Emphasis theirs.) Handbook of National Conference of Commissioners on Uniform State Laws and Proceedings, 1933, p 241.

(CLS 1956, § 257.233 [Stat Ann 1952 Rev § 9.1933]; CL 1948, § 440.20 [Stat Ann § 19.260])."

As supporting this argument defendants cite, among other cases, *Bayer* v. *Jackson City Bank & Trust Co.,* 335 Mich 99, and *Drettmann* v. *Merchand,* 337 Mich 1, neither of which involved the uniform trust receipts act. So far as the complaint is made that the bank did not require Milbourn Trailer Sales to show either a bill of sale or a certificate of title, there is no showing that such, or a "certificate of of origin" (which defendants do not define), was ever issued to Milbourn. It is not our understanding that a dealer ordinarily holds a certificate of title on a vehicle received from a manufacturer, or that such a vehicle is ordinarily registered under the certificate of title act at the time of delivery from manufacturer to dealer, nor does the record disclose such practice. We do not conceive that a local bank, financing in the ordinary course of trade the purchase of a new car (or trailer), must demand the production of a certificate which ordinarily does not then exist. See CLS 1956, § 257.216, as amended by PA 1957, No 110 (Stat Ann 1957 Cum Supp § 9.1916). Moreover, under the assignment made by Milbourn, as we have noted heretofore, a warranty was made that Milbourn held title. We are not persuaded that the plaintiff must fail on the ground that it is not "a bona fide purchaser of the property described in the writ of replevin."

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.