**In re SUPERIOR GROUND SUPPORT, INC., Debtor.**

**NASHVILLE EAGLE, INC., Plaintiff,**

**v.**

**FORD MOTOR CREDIT COMPANY and First of America Bank—Upper Peninsula, N.A., Defendants.**

**Bankruptcy No. HM 91–90012. Adv. No. 91–9023.**

United States Bankruptcy Court, W.D. Michigan.

May 19, 1992.

---

Robert D. Heikkinen, Marquette, Mich., for Nashville Eagle Inc., plaintiff.

Jeryl A. Manchester, Houghton, Mich., for Ford Motor Credit Co., defendant.

James B. Steward, Ishpeming, Mich., Brian D. Sheridan, Ishpeming, Mich., for First of America Bank—U.P., N.A., defendant.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAURENCE E. HOWARD, Bankruptcy Judge.

In the matter before me, the Defendant, Ford Motor Credit Company ("Ford Credit"), moves for summary judgment on the claims raised by the Plaintiff, Nashville Eagle, Inc. Nashville Eagle filed this adversary proceeding seeking the abandonment and turnover of two deicing units used in the service of airplanes. Both machines are subject to liens held by the Defendants. Ultimate resolution of the Plaintiff's adversary proceeding involves determining the priority of the competing interests claimed by the parties.

## FACTUAL AND PROCEDURAL HISTORY

The Debtor, Superior Ground Support, Inc., filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 14, 1991. The Debtor is involved in the manufacture and assembly of deicing units. This process involves affixing a cab, heating coils and other necessary wiring and parts to a truck chassis. The final product is self-propelled deicing unit. Ford Motor Company provided the Debtor with the chassis it needed for production.

On September 18, 1990, Nashville Eagle entered into a purchase order with the

Debtor for three Superior Megatherm 1245 "Instant Heat" Deicer Units for the sum of $238,500.00. Nashville Eagle paid the purchase price in full prior to receiving delivery of the units.

In December of 1990, one of the three deicing machines was completed and delivered to Nashville Eagle. According to affidavits submitted by Ford Credit, the other two currently remain only partially assembled. The whereabouts of these two machines has yet to be established but Ford Credit holds the manufacturer's certificates of origin.

Nashville Eagle claims that by paying for the deicing units it gained an interest superior to either Defendant. The Plaintiff argues that it has attained the elevated and protected status of buyer in the ordinary course of business defined under § 9–307(1) of the Uniform Commercial Code and codified in Michigan as MICH.COMP. LAWS ANN. § 440.9307(1) (Supp.1992).

The Defendants are both secured creditors of the Debtor. First of America asserts a lien in the Debtor's inventory and equipment. Ford Credit maintains a purchase money security interest in the deicing units as a result of its supplying the truck chassis. The validity and perfection of these security interests is not in dispute. Between the two Defendants, First of America agrees that the interest of Ford Credit has priority.

First of America filed a motion for summary judgment on November 20, 1991. I denied this motion at a hearing held on January 30, 1992. The present motion brought by Ford Credit is substantially the same. No new issues are raised. Normally, I would deny this motion without any further discussion. But, I find a legal issue presently capable of resolution that was not before, and so I will proceed.

Ford Credit's Motion for Summary Judgment is made in accordance with Rule 56 of the Federal Rules of Civil Procedure which is incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure. In order to prevail on summary judgment, there must be no material facts in dispute and it must be clear, interpreting the facts most favorably to the non-moving party, that, in this case, Nashville Eagle has failed to state a claim on which relief can be granted. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432 (6th Cir.1987).

## THE UNIFORM COMMERCIAL CODE

■ Section 9–201 of the Uniform Commercial Code, enacted in Michigan as MICH. COMP.LAWS ANN. § 440.9201, states as a general rule of priority that "except as otherwise provided by this act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." Unless an exception to this general rule exists, the security interests of First of America and Ford Credit continue despite disposition of the deicing units. Ford Credit would be entitled to assert its security interest against any purchaser employing the remedies found in MICH.COMP.LAWS ANN. §§ 440.9501–9507. Nashville Eagle has the burden of showing that its right in the two deicing trucks is superior.

Only one exception to § 9–201 is relevant in this case. Nashville Eagle relies on the protection afforded under the Uniform Commercial Code to "buyers in ordinary course of business." Pursuant to MICH. COMP.LAWS ANN. § 440.9307(1) (Supp.1992), a "buyer in ordinary course of business ... takes free of a security interest created by his or her seller even though the security interest is perfected and even though the buyer knows of its existence."

This provision of the U.C.C. exists to protect good faith purchasers from the seller's inventory. Rather than requiring a buyer to research the status of the seller's inventory each time there is a purchase, the burden is placed on the lender secured by the inventory to keep regular account and make sure that the overall value of its collateral is not declining. The secured creditor is not often harmed by this provision. Under MICH.COMP.LAWS ANN. § 440.-9306 (Supp.1992), the creditor's lien interest continues in the proceeds of any sale. Overall, by facilitating the debtor's sales, these sections of the U.C.C. work to the benefit of both parties. The debtor can freely sell its inventory for a profit while

the lender's security interest continues in new inventory purchased with the profit and in the proceeds generated by sales.

For instance, despite the security interests of Ford Credit and First of America, the Debtor is able to sell the assembled units and a purchaser receive them free of any competing interest. The chassis financing security agreement recognizes this result. Paragraph seven of the agreement states that the Debtor "may sell the Property, or any item thereof, at retail, in the ordinary course of Debtor's business." This authorization is limited by the requirement that the Debtor pay to Ford Credit the amount financed at or before the time of sale.

A buyer in ordinary course of business is defined under MICH.COMP.LAWS ANN. § 440.-1201(9) (Supp.1992) as:

> a person who in good faith and without knowledge that the sale to him or her is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling.

White & Summers' treatise on the Uniform Commercial Code sets forth a list of six conditions one must meet before attaining the protected status of "buyer in ordinary course of business." They are as follows:

> 1. the person must be a buyer in the ordinary course;
> 2. who does not buy in bulk and does not take his interest as security for or in total satisfaction of a pre-existing debt;
> 3. who buys from one in the business of selling goods of that kind;
> 4. who buys in good faith and without knowledge that his purchase is in violation of others' ownership rights or security interests; and
> 5. does not buy farm products from a person engaged in farming operations; and
> 6. the competing security interest must be one "created by his seller."

2 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 26–13 at 532 (3rd. ed.1988).

In its Motion for Summary Judgment, Ford Credit, like First of America, asserts that Nashville Eagle has not attained the status of buyer. Or, stated similarly, the Plaintiff cannot be considered a buyer because a completed purchase has not occurred. Each side has focused primarily upon this contention in their briefs and it is the definition of what constitutes a buyer or a sale for the purposes of § 9–307(1) that is ripe for summary judgment. Arriving at a standard to be applied to the facts of this proceeding involves only legal inquiry.

Logically, a buyer in the ordinary course of business emerges only upon the completion of a sale. Therefore, I believe it proper to consider definitions of what constitutes a sale in addition to a buyer in determining whether Nashville Eagle merits protection under MICH.COMP.LAWS ANN. § 440.9307(1) (Supp.1992). *See, e.g., International Harvester Credit Corp. v. Associates Financial Services Co.*, 133 Ga.App. 488, 211 S.E.2d 430 (1974).

*Buyer Under the U.C.C.*

Under the Uniform Commercial Code, a buyer is defined as a person "who buys or contracts to buy goods." MICH.COMP.LAWS ANN. § 440.2103(1)(a). Merely reading this definition reveals not only its breadth but also its ambiguity and the need to consult additional provisions for guidance. Looking further, the term "purchase" is defined to include the "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property." MICH.COMP.LAWS ANN. § 440.1201(32) (Supp.1992). Alternatively, a sale "consists in the passing of title from the seller to the buyer for a price." MICH.COMP.LAWS ANN. § 440.2106(1). Reference is explicitly made to MICH.COMP.LAWS ANN. § 440.2401 for the explanation of what is required to pass title.

MICH.COMP.LAWS ANN. § 440.2401 states that the provisions of Michigan law dealing with sales apply irrespective of a formal concept of title to the goods. Rather, a property interest in goods is said to pass upon identification. Under MICH.COMP.

LAWS ANN. § 440.2501 identification can occur in any manner explicitly agreed to by the parties. In the absence of such an agreement, identification occurs when the contract is made if it is for the sale of goods already existing. MICH.COMP.LAWS ANN. § 440.2501(1)(a). If the contract is for the sale of future goods, identification occurs when the goods are shipped, marked or otherwise designated by the seller. MICH.COMP.LAWS ANN. § 440.2501(1)(b).

Rather than relying on the Uniform Commercial Code to supply the definition of when a sale occurs, Ford Credit argues that the Michigan vehicle code ("vehicle code") is applicable to this proceeding and controls the result. Based on the vehicle code, Ford Credit asserts that a completed sale does not take place until formal title to the vehicles has passed.

*Michigan Vehicle Code*

In the state of Michigan, pursuant to MICH.COMP.LAWS ANN. § 257.216, "[e]very motor vehicle ... when driven or moved upon a highway, shall be subject to the registration and certificate of title provisions" of the Michigan vehicle code. MICH. COMP.LAWS ANN. §§ 257.1–257.923. The owner of a vehicle is required to obtain a certificate of title and appropriate registration. MICH.COMP.LAWS ANN. § 257.217(1). Under the same section, a dealer must apply, within 15 days after delivery, for a new certificate of title in the name of the purchaser. MICH.COMP.LAWS ANN. § 257.-217(2). As a penalty, the vehicle code provides that it shall be a misdemeanor to operate a vehicle without procuring the appropriate certificate of title and registration. MICH.COMP.LAWS ANN. § 257.215.

With respect to the transfer of motor vehicles, the owner is required to endorse and deliver the certificate of title to the purchaser. MICH.COMP.LAWS ANN. § 257.-233(4). Again, it is a misdemeanor to fail to comply. MICH.COMP.LAWS ANN. § 257.-239. The transferee of the vehicle is required to obtain a new certificate of title from the secretary of state. MICH.COMP. LAWS ANN. § 257.234(1).

The purpose of these title provisions is to guard against fraud and to discourage unlawful disposition. *Taylor v. Burdick,* 320 Mich. 25, 30, 30 N.W.2d 418, 421 (1948). Possession of the certificate of title offers tangible and readily verifiable evidence of ownership consistent across the state.

Furthering this same purpose, the Michigan vehicle code provides that "the effective date of the transfer of title or interest in the vehicle shall be the date of execution of either the application for title or the certificate of title." MICH.COMP.LAWS ANN. § 257.233(5). A completed sale and the transfer of an ownership interest does not result under Michigan law until the time when compliance with the vehicle code is accomplished. *Drettmann v. Marchand,* 337 Mich. 1, 6, 59 N.W.2d 56, 58 (1953); *Michigan Mut. Ins. Co. v. Reddig,* 129 Mich.App. 631, 634–35, 341 N.W.2d 847, 849 (1983), *lv. den.,* 419 Mich. 877 (1984). Stated more simply, a sale does not result until the certificate of title provisions are satisfied. This is an exclusive and unavoidable requirement for the transfer of ownership. *Gazdecki v. Cargill,* 28 Mich.App. 128, 131, 183 N.W.2d 805, 806 (1970); *Messer v. Averill,* 28 Mich.App. 62, 66, 183 N.W.2d 802, 804 (1970). Any sale accomplished in violation of the Michigan vehicle code's requirements on the transfer of title is void. *Noorthoek v. Preferred Automobile Ins. Co.,* 292 Mich. 561, 567, 291 N.W. 6, 9 (1940); *Karibian v. Paletta,* 122 Mich. App. 353, 357, 332 N.W.2d 484, 486 (1983).

The conclusions of law just outlined evidence a consistent decisional trend of the Michigan courts represented most notably by the case, *Bayer v. Jackson Bank & Trust Co.,* 335 Mich. 99, 55 N.W.2d 746 (1952). The plaintiff in this case purchased a used automobile from a car dealer who had granted a lien in all its inventory to the defendant-bank. The dealer delivered possession of the car to the plaintiff, but failed to execute an application to obtain the certificate of title. The defendant-bank retained the documents of title for the vehicle. The dealer subsequently filed for bankruptcy and a suit was initiated to determine who had superior rights. The Michigan Supreme Court ultimately concluded that the sale between the debtor-

dealer and the plaintiff was invalid. *Bayer*, 335 Mich. at 110, 55 N.W.2d at 752. Failure to procure the transfer of title and comply with the Michigan vehicle code left the purported sale and transfer of possession without any effect. *Id.* The ultimate ownership rights in the auto still remained with the dealer subject to the bank's lien. *See, Bayer*, 335 Mich. at 104, 55 N.W.2d at 749.

The Sixth Circuit, in an opinion requiring the interpretation of Michigan law, adopted the holding of *Bayer v. Jackson Bank & Trust Co.* and held that in Michigan, "[f]ailure to comply with the statutory requirements that the seller endorse and deliver the certificate of title render [sic] the transaction void." *William G. Wilcox, D.O., P.C. Emp. Defined Benefit Pension Trust v. U.S.*, 888 F.2d 1111, 1116 (6th Cir.1989) (citations omitted).

Little doubt exists that in Michigan the transfer of ownership in a motor vehicle must be accomplished in compliance with the vehicle code. A sale does not take place and a buyer emerge until the statutory duties have been performed. The vehicle code states clearly that the term "owner" means, in relevant part, "a person holding legal title of a vehicle." MICH. COMP.LAWS ANN. § 257.37. This makes sense since no ownership rights are transferred by a void sale.

Now, I realize these sections of the Michigan vehicle code are somewhat in conflict with the U.C.C. The Uniform Commercial Code was drafted with the intent of eliminating a formal reliance on the concept of title. MICH.COMP.LAWS ANN. § 440.2401 cmt. 1 (1990). Further, MICH.COMP.LAWS ANN. § 440.9202 provides that each section of Article Nine "with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor." Finally, I have reviewed sections of the U.C.C. concerning the identification of goods and a party's status as a buyer.

Despite these conflicting provisions, where the specific goods involved are motor vehicles, the Michigan vehicle code controls the transfer of ownership and the time when a buyer results. *Whitcraft v. Wolfe*, 148 Mich.App. 40, 50, 384 N.W.2d 400, 404 (1985). The specific provisions and purpose of the Michigan vehicle code take priority over the U.C.C. The Michigan vehicle code, in this sense, trumps the Uniform Commercial Code.

> The UCC does not govern the means by which automobile ownership is transferred except perhaps where the MVC contains no applicable law. *Messer v. Averill*, 28 Mich.App. 62, 66, 183 N.W.2d 802 (1970), *lv. den.* 384 Mich. 808 (1971). The MVC preempts the UCC in regard to transfers of ownership. *Colonial Dodge, Inc. v. Miller* (On Rehearing), 121 Mich.App. 466, 475, 328 N.W.2d 678 (1982), *rev'd on other grounds*, 420 Mich. 452, 362 N.W.2d 704 (1984).... Failure to comply with the statutory requirements relating to endorsement and delivery of the certificate of title renders the transaction void.... If the transfer is void, the seller remains the owner.

*Whitcraft*, 148 Mich.App. at 50, 384 N.W.2d at 404–405; *Wilcox*, 888 F.2d at 1116–1117 (citing this portion of the *Whitcraft* decision as well).

The holding of *Bayer v. Jackson Bank & Trust Co.* has never been overruled. Rather, subsequent decisions of Michigan courts and the Sixth Circuit have reaffirmed its conclusions and its effect. In light of the cases and the statutes reviewed, I am persuaded that the protection afforded to a buyer in ordinary course of business of motor vehicles does not result without compliance with the Michigan vehicle code's provisions on the transfer of ownership. If the deicing units at issue in this case are motor vehicles, the Michigan vehicle code provides the applicable law for determining whether Nashville Eagle is a buyer meriting protection under § 9–307(1).

SUMMARY JUDGMENT

■ Although deciding that the vehicle code preempts the U.C.C. as to the determination of when a sale occurs, I am still left with the question of whether the vehicle code applies to this adversary proceeding. At issue is whether the deicing units are motor vehicles subject to the provisions of

the vehicle code. Vehicle is defined to mean "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway." MICH. COMP.LAWS ANN. § 257.79. The term motor vehicle includes the additional requirement that the vehicle is self-propelled. MICH. COMP.LAWS ANN. § 257.33.

Whether a deicing unit is indeed a motor vehicle subject to the vehicle code is in part a factual question that I decline to rule on at this time. The affidavits submitted by Ford Credit in support of its motion do not compel the denial of the Plaintiff's adversary proceeding on summary judgment. More testimony is needed on the nature of the completed deicing machine and whether the finished unit is a motor vehicle subject to the certificate of title provisions of Michigan law.

Also, as I stated in my previous summary judgment opinion, exemptions exist from the vehicle code that may be applicable depending on further factual inquiry. MICH.COMP.LAWS ANN. § 257.216(a) and § 257.216(i). Testimony is needed on whether a completed deicing machine is driven upon the highway other than under special dealer plates and for the purpose of testing or delivery.

Finally, even if the vehicle code applies, additional testimony is needed on whether the Debtor has in any way complied with its provisions or taken steps to transfer title. The actions of the Debtor have yet to be examined.

CONCLUSION

For these reasons, Ford Credit's Motion for Summary Judgment is ultimately denied. The Court does however make the conclusion of law that in the event the Michigan vehicle code applies, its provisions on the transfer of title will govern the determination of when a sale occurs and whether the Plaintiff can be deemed a buyer in the ordinary course of business.