COLONIAL DODGE, INC v MILLER

Docket No. 55966. Submitted November 11, 1981, at Detroit.—Decided
    May 5, 1982.

Clarence R. Miller picked up his new Dodge station wagon from
    Colonial Dodge, Inc., and drove it a short distance where he
    exchanged the new car for an old car driven by his wife. When
    Mr. Miller returned from work, his wife informed him that the
    new automobile had no spare tire. The following morning
    Miller telephoned the salesman and expressed his dissatisfac-
    tion. Miller was informed that the car had no spare tire
    because of a tire strike. Miller indicated to the salesman that
    he drove on Detroit area expressways up to 170 miles per day
    and had paid extra money for the high quality steel-belted
    radial tires. Upon receiving no satisfactory response from the
    salesman, Miller told the salesman to come and get the auto-
    mobile because Miller did not want it. Miller stopped payment
    on his checks, left the automobile in the street in front of his
    house and refused receipt of license plates for the automobile.
    When the temporary registration expired, the police towed the
    automobile and impounded it. Colonial Dodge commenced an
    action in Macomb Circuit Court against Miller and its business
    owner's insurance carrier. Following a nonjury trial, Kenneth
    N. Sanborn, J., dismissed the claim against the insurance
    company and held in favor of plaintiff on its claim against
    Miller, awarding as damages the contract price less the resale
    value of the automobile. Plaintiff appeals. *Held:*

    1. The trial court erred in finding that the delivery of the
    automobile constituted acceptance of goods within the meaning
    of the Uniform Commercial Code. Acceptance under the code

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 67 Am Jur 2d, Sales §§ 372, 382.
[2] 67 Am Jur 2d, Sales § 387.
[3, 4] 67 Am Jur 2d, Sales §§ 386, 391, 393.
[5-7] 67 Am Jur 2d, Sales § 390.
    What constitutes "substantial impairment" entitling buyer to re-
    voke his acceptance of goods pursuant to UCC § 2-608(1)). 98
    ALR3d 1183.               .                    .
[8] 67 Am Jur 2d, Sales §§ 631, 640.

takes place only after the buyer has had a reasonable opportunity to inspect the goods and either signifies acceptance or fails to make an effective rejection or does any act inconsistent with the seller's ownership. Since Miller did not have a reasonable opportunity to inspect the automobile and did not act inconsistently with plaintiff's ownership after the nonconformity was discovered, he had an absolute right to reject the automobile because of the failure of the automobile to conform with the sales contract, *i.e.,* to have five tires including the spare tire.

2. Miller's use of the telephone as the means of communication of the fact of his rejection of the automobile was sufficient in that such notice reasonably informed the seller of the fact of rejection and the reason for the rejection.

Reversed and remanded.

CYNAR, P.J., dissented. He would hold that the trial court's determination that the temporarily missing spare tire did not constitute substantial impairment of value was correct and, accordingly, disagreed with the majority's finding that Miller properly rejected the automobile. He, however, would hold that plaintiff's measure of damages should have been the full contract price of the automobile.

### OPINION OF THE COURT

1. SALES — UNIFORM COMMERCIAL CODE — ACCEPTANCE OF GOODS.

The mere taking of possession of goods by or the delivery of goods to a buyer does not constitute automatic acceptance under the Uniform Commercial Code; acceptance under the UCC takes place only after there has been a reasonable opportunity to inspect the goods (MCL 440.2606[1][a], [b]; MSA 19.2606[1][a], [b]).

2. SALES — UNIFORM COMMERCIAL CODE — ACCEPTANCE OF GOODS — AUTOMOBILES.

The taking delivery of an automobile does not constitute acceptance of such goods under the provisions of the Uniform Commercial Code until such time as the purchaser has had a reasonable opportunity to inspect the automobile to ascertain whether it conforms with the sales contract; upon discovery of a failure of the automobile to conform to the contract after a reasonable opportunity to inspect the automobile, the buyer has an absolute right to reject the automobile.

3. SALES — UNIFORM COMMERCIAL CODE — REJECTION OF GOODS — NOTICE OF REJECTION.

A nonmerchant buyer of goods subject to the sales provisions of

the Uniform Commercial Code who seeks to rightfully reject those goods must seasonably inform the seller of the fact of the rejection; thereafter the buyer has no further obligations with regard to goods rightfully rejected, the seller bearing the duty to remove or repossess the nonconforming goods (MCL 440.2602; MSA 19.2602).

4. SALES — UNIFORM COMMERCIAL CODE — REJECTION OF GOODS — NOTICE OF REJECTION — TELEPHONE COMMUNICATION.

A notice of rejection of nonconforming goods by means of the telephone is effective under the sales provisions of the Uniform Commercial Code where the use of such means of communication reasonably conveys to the seller the fact of rejection of the goods and the reason for the rejection.

DISSENT BY CYNAR, P.J.

5. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPTANCE — IMPAIRMENT OF VALUE OF GOODS.

*A buyer of goods subject to the sales provisions of the Uniform Commercial Code may revoke the acceptance of nonconforming goods only where the nonconformity substantially impairs the value of the goods; the existence of such nonconformity depends upon the facts and circumstances of the particular case (MCL 440.2608; MSA 19.2608).*

6. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPTANCE — IMPAIRMENT OF VALUE OF GOODS.

*The purpose of the Uniform Commercial Code requirement that before there can be revocation of acceptance of goods there must be a showing of substantial impairment of the value of the goods is to preclude revocation for trivial defects or defects which may be easily corrected (MCL 440.2608; MSA 19.2608).*

7. SALES — UNIFORM COMMERCIAL CODE — REJECTION OF GOODS — AUTOMOBILES.

*The temporary absence of a spare tire at the time of delivery of an automobile to a buyer does not constitute a substantial impairment in value within the meaning of the Uniform Commercial Code such as will justify the buyer in rejecting acceptance of the automobile.*

8. SALES — DAMAGES — MEASURE OF DAMAGES — CONTRACTS.

*The proper measure of damages with respect to goods which were*

*wrongfully rejected by the buyer is the full contract price of the goods.*

*Anthony B. Roshak,* for plaintiff.

*Monash & Monash,* for defendant Miller.

Before: CYNAR, P.J., and V. J. BRENNAN and H. E. DEMING,* JJ.

H. E. DEMING, J. On May 28, 1976, Clarence R. Miller went to the plaintiff's dealership to pick up his new Dodge station wagon. He signed one form and drove the vehicle a short distance, exchanging cars with his wife. Mr. Miller drove an older car to work while Mrs. Miller returned home with the new car at about 3 p.m. When Mr. Miller returned home his wife informed him that the new car had no spare tire. Because Miller worked the night shift and the dealership was not open when he received word that his new car had no spare tire, Miller waited until the next morning to phone the salesman who had sold him the car. When Mr. Miller expressed dissatisfaction, the salesman informed him that he knew that the car had no spare tire because of a tire strike but that he (the salesman) had other things on his mind.

When Mr. Miller reiterated that he drove long distances to and from work on Detroit area expressways, up to 170 miles per day, and that he had paid extra money for high quality steel-belted radial tires, he received no satisfactory answer. Miller then told the salesman to come and get the car and that he didn't want it and that he was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

going to stop payment on two checks given in payment for the automobile.[1]

After Miller stopped payment on the checks, he parked the automobile in front of his house, later refusing receipt of license plates for the car. When the temporary vehicle registration expired, ten days after the car was purchased, police officers towed the new car and impounded it.

The plaintiff concedes that the automobile did not have a spare tire but argues that one finally did arrive after the tire strike ended. Plaintiff also concedes that it is reasonable to expect, and that defendant in fact paid for, five tires with the car that he purchased.

Plaintiff sued defendant Miller for the purchase price of the car. Miller defended on the basis that he had either never accepted the car or had properly revoked acceptance under provisions of the Uniform Commercial Code. The trial court found that plaintiff was entitled to the contract price of the vehicle, less what it would have received from resale of the car within a reasonable period after the defendant breached the sales contract. Judgment was entered for $1,342.31. The plaintiff appeals.

At issue is whether Mr. Miller ever accepted the automobile within the meaning of MCL 440.2606; MSA 19.2606, and, if so, whether that acceptance was properly revoked pursuant to MCL 440.2608; MSA 19.2608.

The Uniform Commercial Code is a highly integrated statute and the sections must be carefully

---

[1] We take judicial notice of the fact that Detroit area freeways and expressways have been the scene of violent crime and that many citizens justifiably fear automobile breakdowns while traveling on the expressways and the danger attendant thereto. See, *e.g., People v Jelks,* 33 Mich App 425; 190 NW2d 291 (1971); *People v Keeth,* 63 Mich App 589; 234 NW2d 717 (1975); *People v Dalton,* 83 Mich App 725; 269 NW2d 280 (1978), *vacated in part* 406 Mich 996 (1978).

read as integrated law. Fair and just application of the code rarely involves reference to only one section. *Detroit Power Screwdriver v Ladney,* 25 Mich App 478, 484; 181 NW2d 828 (1970).

Because the term "acceptance" is one of art in the UCC, we begin with the UCC definition of that term.

"Sec. 2606. (1) Acceptance of goods occurs when the buyer

"(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

"(b) fails to make an effective rejection (subsection [1] of Section 2602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

"(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

"(2) Acceptance of a part of any commercial unit is acceptance of that entire unit."

It is clear that, under the code, delivery does not in and of itself constitute acceptance. In White & Summers, Handbook of the Law Under the Uniform Commercial Code (2d ed), § 8-2, p 296, the concept of acceptance as within the meaning of § 2-606 is discussed. The authors point out that, because acceptance is a term of art which must be sharply distinguished from a variety of other acts which a buyer might commit, the code first distinguishes and separates title problems from the problem of acceptance. Secondly, acceptance is only tangentially related to a buyer's possession of the goods, and in the usual case the buyer will have had possession of the goods for some time

before he has accepted them within the meaning of the code.

The mere taking of possession of goods by or delivery of goods to a buyer does not equal automatic acceptance, for the UCC makes an important and just allowance of a "reasonable opportunity" to inspect goods. MCL 440.2606(1)(a), (b); MSA 19.2606(1)(a), (b); *Jacob Hartz Seed Co v E R Coleman Co,* 271 Ark 756, 758; 612 SW2d 91 (1981).

In *Zabriske Chevrolet, Inc v Smith,* 99 NJ Super 441; 240 A2d 195 (1968), the court viewed a similar circumstance. Plaintiff sold defendant a new Chevrolet automobile. After driving it a short distance, the automobile became inoperable. Defendant phoned the dealership, "canceled" the sale, and stopped payment on the check written in purchase of the automobile. The dealer thereafter sued for the purchase price of the car. Plaintiff repaired the vehicle and notified defendant that the automobile was now operable. The car that the Smiths purchased remained in storage for a lengthy period of time.

In *Zabriske,* as here, plaintiff argued strongly that § 2-607(1), MCL 440.2607(1); MSA 19.2607(1), applied and that, having accepted the vehicle, defendant was bound to pay for it according to the terms of the contract. In specifically rejecting plaintiff's argument, the *Zabriske* court said:

"It is clear that a buyer does not accept goods until he has had a 'reasonable opportunity to inspect.' Defendant sought to purchase a new car. He assumed what every new car buyer has a right to assume and, indeed, has been led to assume by the high powered advertising techniques of the auto industry—that his new car, with the exception of very minor adjustments, would be mechanically new and factory-furnished, operate per-

fectly, and be free of substantial defects. The vehicle delivered to defendant did not measure up to these representations. Plaintiff contends that defendant had 'reasonable opportunity to inspect' by the privilege to take the car for a typical 'spin around the block' before signing the purchase order. If by this contention plaintiff equates a spin around the block with 'reasonable opportunity to inspect', the contention is illusory and unrealistic. To the layman, the complicated mechanisms of today's automobiles are a complete mystery. To have the automobile inspected by someone with sufficient expertise to disassemble the vehicle in order to discover latent defects before the contract is signed, is assuredly impossible and highly impractical. *Cf. Massari v Accurate Bushing Co,* 8 NJ 299, 313 [85 A2d 260 (1951)]. Consequently, the first few miles of driving become even more significant to the excited new car buyer. This is the buyer's first reasonable opportunity to enjoy his new vehicle to see if it conforms to what it was represented to be and whether he is getting what he bargained for. How long the buyer may drive the new car under the guise of inspection of new goods is not an issue in the present case. It is clear that defendant discovered the nonconformity within 7/10 of a mile and minutes after leaving plaintiff's showroom. Certainly this was well within the ambit of 'reasonable opportunity to inspect.' " *Id.,* 452-453.

Moreover, the court specifically recognized the perfect tender rule of § 2-601 specifically rejecting pre-code cases which held that substantial compliance with contract terms entitled the seller to force a buyer to accept nonconforming goods and pay for them.

We conclude that the trial court's finding that defendant Miller had accepted the automobile is clearly erroneous. Acceptance, as that term is used in the Uniform Commercial Code, is much more than taking delivery. Acceptance cannot occur, as a matter of law, unless and until the buyer has had a "reasonable" opportunity to inspect the

purchased goods. MCL 440.2606(1); MSA 19.2606(1); *Zabriske, supra, Jacob Hartz Seed Co, supra.*

Since Mr. Miller did not have a reasonable opportunity to inspect the automobile and did not act inconsistently with the seller's ownership after the hidden defect was in fact found, we hold that he had an absolute right to reject the automobile because it failed to conform to the contract, *i.e.,* it did not have five tires. *Champion Ford Sales, Inc v Levine,* 49 Md App 547; 433 A2d 1218 (1981); *Zabriske, supra.*

Having concluded that Mr. Miller never accepted the vehicle, we turn to the facts surrounding his rejection. MCL 440.2602; MSA 19.2602. It is undisputed that on the morning after taking delivery of the station wagon, Mr. Miller phoned the dealership, discussed the absence of the spare tire, and, after receiving no satisfactory explanation, orally rejected the automobile as not conforming to the purchase contract. He told the dealer's agent to come and pick up the car because he refused to drive it at all without a spare tire.

At issue is the propriety of defendant's rejection. MCL 440.2602; MSA 19.2602 requires a nonmerchant buyer who has rightfully rejected goods to seasonably inform the seller of the fact of rejection. Thereafter, the buyer has no further obligations with regard to goods rightfully rejected. MCL 440.2602(2)(c); MSA 19.2602(2)(c). The duty of the seller to remove or repossess the nonconforming goods is universally recognized. *Presto Manufacturing Co, Inc v Formetal Engineering Co,* 46 Ill App 3d 7; 360 NE2d 510 (1977); *Graybar Electric Co v Shook,* 283 NC 213; 195 SE2d 514 (1973); *Garfinkel v Lehman Floor Covering Co,* 60 Misc 2d 72; 302 NYS2d 167 (1969).

Nor do we find that defendant's method of notice, the telephone, was inappropriate under these circumstances. There is no dispute concerning the unequivocal nature of Mr. Miller's rejection of the automobile or the reason for the rejection. Moreover, there is no doubt that Mr. Miller never used the car after he told the plaintiff's agent to come and pick it up. The cases holding that oral notice is not sufficient are not applicable here. See, *e.g., Southeastern Steel Co v Burton Block & Concrete Co, Inc,* 273 SC 634; 258 SE2d 888 (1979). Rather, we opt for the code rule that any notice must be "seasonable"—a notice that reasonably informs the seller of the fact of rejection and the reason therefor. *G & H Land & Cattle Co v Heitzman & Nelson, Inc,* 102 Idaho 204; 628 P2d 1038 (1981); *Jacob Hartz Seed Co, supra.*

Having properly rejected nonconforming goods, defendant Miller had no other obligation and properly parked the vehicle in front of his house. MCL 440.2602(2)(c); MSA 19.2602(2)(c). However, we direct that, on remand, Mr. Miller execute whatever documents are required to vest legal title in the plaintiff, forthwith.

Reversed and remanded. Costs to appellee.

V. J. BRENNAN, J., concurred.

CYNAR, P.J. *(dissenting).* Defendant Miller entered into a special purchase order with plaintiff for the purchase of a station wagon specified as a "Heavy Duty Trailer Package" which included "heavy duty oversized tires". The specially ordered station wagon was delivered to plaintiff and Miller picked up the vehicle after Miller executed an application for Michigan title and made payment for the vehicle with checks. The invoice indicated that the spare tire was not included in the deliv-

ery and would be shipped later, the delay being attributed to a nationwide tire strike. The following day Miller called plaintiff and complained about the missing tire, stopped payment on the checks, and advised plaintiff to pick up the station wagon, which was parked in front of his home. Plaintiff advised Miller when the replacement tire became available.

In *Zabriske Chevrolet, Inc v Smith,* 99 NJ Super 441; 240 A2d 195 (1968), an automobile became inoperable 7/10 of a mile and minutes after leaving the dealer's showroom. The court decided that the buyer had a right to assume that his new car, with the exception of very minor adjustments, would be mechanically new, factory-furnished, operate perfectly, and be free of substantial defects. While I am in total agreement with the *Zabriske* decision, it must be pointed out that the facts in the matter submitted for our decision are not similar.

A buyer may properly revoke acceptance where the nonconformity substantially impairs its value. The existence of such nonconformity depends on the facts and circumstances of each case. *Jorgensen v Pressnall,* 274 Or 285; 545 P2d 1382 (1976). The determination of substantial impairment has been made from the buyer's subjective view, considering particular needs and circumstances. See Summers & White, Handbook of the Law Under the Uniform Commercial Code (2d ed), § 8-3, p 308; Committee Comment 2 to MCL 440.2608; MSA 19.2608. An objective approach was utilized in *Fargo Machine & Tool Co v Keaney & Trecker Corp,* 428 F Supp 364 (ED Mich, 1977), and an objective and subjective test was employed in *Jorgensen, supra.*

The purpose of the requirement of substantial

impairment of value is to preclude revocation for trivial defects or defects which may be easily corrected. *Rozmus v Thompson's Lincoln-Mercury Co*, 209 Pa Super 120; 224 A2d 782 (1966).

The trial judge's determination that the temporarily missing spare tire did not constitute a substantial impairment in value under either the subjective or objective test was not clearly erroneous. I therefore disagree with the majority finding that defendant Miller properly rejected the vehicle, and I would affirm the trial court's finding in that regard.

Having determined that defendant Miller wrongfully revoked acceptance in this case, the trial court found that the vehicle would have been resold for $1,000 less, on or about September 1, 1976, than the sales price to defendant Miller and therefore this was the amount of damages the plaintiff was entitled to recover. With this determination, I must disagree. Based on *Allen v Michigan Bell Telephone Co*, 61 Mich App 62, 68; 232 NW2d 302 (1975), the trial court should have awarded the full contract price to plaintiff.