COLONIAL DODGE, INC v MILLER (ON REHEARING)

Docket No. 55966. Submitted June 8, 1982, at Lansing.—Decided November 18, 1982. Leave to appeal applied for.

Clarence R. Miller picked up his new Dodge station wagon from Colonial Dodge, Inc., and drove it a short distance where he exchanged the new car for an old car driven by his wife. When Mr. Miller returned from work, his wife informed him that the new automobile had no spare tire. The following morning Miller telephoned the salesman and expressed his dissatisfaction. Miller was informed that the car had no spare tire because of a tire manufacturers' strike. Miller indicated to the salesman that he drove on Detroit area expressways up to 170 miles per day and had paid extra money for the high quality steel-belted radial tires. Upon receiving no satisfactory response from the salesman, Miller told the salesman to come and get the automobile because Miller did not want it. Miller stopped payment on his money orders, left the automobile in the street in front of his house and refused receipt of license plates for the automobile. When the temporary registration expired, the police towed the automobile away and impounded it. Colonial Dodge commenced an action in Macomb Circuit Court against Miller and its business owner's insurance carrier. Following a nonjury trial, Kenneth N. Sanborn, J., dismissed the claim against the insurance company and held in favor of plaintiff on its claim against Miller, awarding as damages the contract price less the resale value of the automobile. Plaintiff appealed,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 67 Am Jur 2d, Sales § 710.
What constitutes "substantial impairment" entitling buyer to revoke his acceptance of goods under UCC § 2-601(1). 98 ALR3d 1183.
Measure and elements of buyer's recovery upon revocation of acceptance of goods under UCC § 2-608(1). 65 ALR3d 388.
[3] 7A Am Jur 2d, Automobiles and Highway Traffic § 30 et seq.
[4] 15A Am Jur 2d, Commercial Code § 24.
[5] 67 Am Jur 2d, Sales § 81.
Construction and effect of UCC Art 2, dealing with sales. 17 ALR3d 1010.
[6-8] 67 Am Jur 2d, Sales §§ 387, 391.

limiting its appeal to the amount of damages awarded by the trial court. The Court of Appeals reversed and remanded the case, holding that the trial court erred in finding that the delivery of the automobile constituted acceptance of goods within the meaning of the Uniform Commercial Code and that Miller's use of the telephone as the means of communication of the fact of his rejection of the automobile was sufficient, 116 Mich App 78; 322 NW2d 549 (1982). Plaintiff filed an application for rehearing by the Court of Appeals. Rehearing was granted. *Held:*

1. The trial court's determination that the temporarily missing spare tire did not constitute a substantial impairment in the value of the automobile was not clearly erroneous and is affirmed. Since the value of the automobile was not substantially impaired by the fact that the spare tire was missing, Miller was not entitled to revoke his acceptance of the automobile on that basis. The revocation of acceptance was improper.

2. The Michigan Vehicle Code governs transfer of ownership of vehicles, thereby pre-empting application of the Uniform Commercial Code. The vehicle was registered and titled in Miller's name. Plaintiff, therefore, could not have transferred good title to another buyer. Any attempt by plaintiff to resell the vehicle to recoup its lost profits would have been unavailing. Thus, the judgment of the trial court relating to damages is clearly erroneous and is set aside. Plaintiff is entitled to the full contract price of the vehicle.

The judgment of the trial court is affirmed but modified as to the amount of damages.

H. E. DEMING, J., dissented. He would hold that the Uniform Commercial Code governs this case and that Miller never accepted the automobile within the meaning of the UCC. Furthermore, he would hold that, even if Miller did accept the automobile, his method of notifying plaintiff of the fact that he was revoking his acceptance would have been appropriate and proper. He believes that the majority's conclusion that plaintiff is entitled to the full purchase price of the automobile is not only unconscionable but wrong as a matter of law. He would reverse the judgment of the trial court.

OPINION OF THE COURT

1. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPTANCE — IMPAIRMENT OF VALUE OF GOODS.

A buyer of goods subject to the sales provisions of the Uniform Commercial Code may revoke the acceptance of nonconforming

*goods* only where the nonconformity substantially impairs the value of the goods; the existence of such nonconformity depends upon the facts and circumstances of the particular case and the determination of substantial impairment is made from an objective view or from the buyer's subjective view, considering the particular needs and circumstances (MCL 440.2608; MSA 19.2608).

2. Sales — Uniform Commercial Code — Revocation of Acceptance — Impairment of Value of Goods.

The purpose of the Uniform Commercial Code's requirement of substantial impairment of value of goods purchased before the buyer may revoke his acceptance of the goods is to preclude revocation for trivial defects or defects which may be easily corrected (MCL 440.2608; MSA 19.2608).

3. Automobiles — Transfer of Ownership — Michigan Vehicle Code — Uniform Commercial Code.

The Michigan Vehicle Code governs transfer of ownership of vehicles; the Uniform Commercial Code does not govern the means by which automobile ownership is transferred because a special act must be taken as an exception to a general act which, if standing alone, would include the same matter and conflict with the special act especially when the general and special acts are contemporaneous, for it is not presumed that the Legislature intended a conflict (MCL 257.217(b), 440.1101 *et seq.;* MSA 9.1917[2], 19.1101 *et seq.).*

4. Sales — Uniform Commercial Code — Remedies — Measure of Damages.

Remedies provided by the Uniform Commercial Code are to be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed; where the measure of damages is inadequate to put a seller in as good a position as performance would have done, the seller's measure of damages is based upon his lost profits in connection with the particular sale (MCL 440.1106[1], 440.2708[2]; MSA 19.1106[1], 19.2708[2]).

Dissent by H. E. Deming, J.

5. Sales — Uniform Commercial Code — Acceptance of Goods.

*The mere taking of possession of goods by or the delivery of goods to a buyer does not constitute automatic acceptance under the Uniform Commercial Code; acceptance under the UCC takes place only after there has been a reasonable opportunity to*

*inspect the goods (MCL 440.2606[1], subds [a], [b]; MSA 19.2606[1], subds [a], [b]).*

6. SALES — UNIFORM COMMERCIAL CODE — REJECTION OF NONCONFORMING GOODS.

*The right of a buyer of goods to reject nonconforming goods prior to acceptance is nearly absolute under the Uniform Commercial Code, which plainly and unequivocally rejects the notion of substantial compliance by a seller, insisting on a rule of perfect tender limited only by express provisions pertaining to installment contracts and contractual limitations on remedies (MCL 440.2601, 440.2612, 440.2718, 440.2719; MSA 19.2601, 19.2612, 19.2718, 19.2719).*

7. SALES — UNIFORM COMMERCIAL CODE — REJECTION OF GOODS — NOTICE OF REJECTION.

*A nonmerchant buyer of goods subject to the sales provisions of the Uniform Commercial Code who seeks to rightfully reject those goods must seasonably inform the seller of the fact of the rejection; thereafter the buyer has no further obligations with regard to goods rightfully rejected, the seller bearing the duty to remove or repossess the nonconforming goods (MCL 440.2602; MSA 19.2602).*

8. SALES — UNIFORM COMMERCIAL CODE — REJECTION OF GOODS — NOTICE OF REJECTION — TELEPHONE COMMUNICATION.

*A notice of rejection of nonconforming goods by means of the telephone is effective under the sales provisions of the Uniform Commercial Code where the use of such means of communication reasonably conveys to the seller the fact of rejection of the goods and the reason for the rejection.*

*Anthony B. Roshak,* for plaintiff.

*Monash & Monash, P.C.* (by *Richard A. Monash),* for defendant.

ON REHEARING

Before: CYNAR, P.J., and V. J. BRENNAN and H. E. DEMING,* JJ.

PER CURIAM. A judgment was entered on Janu-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ary 13, 1981, awarding damages in favor of plaintiff against defendant Clarence R. Miller in the amount of $1,000, together with costs entered in the amount of $342.31. Plaintiff, Colonial Dodge, Inc., appeals as of right.

Plaintiff filed an action against The Home Insurance Company (Home Insurance) and Miller. The action against Home Insurance is not an issue in this appeal. In the action against Miller, plaintiff sought damages for breach of a sales contract to purchase a new automobile. In a nonjury trial, the trial judge determined that plaintiff was entitled to the contract price of the motor vehicle less the amount plaintiff could have received from a resale of the vehicle within a reasonable period of time after the breach.

Only two issues were raised by plaintiff in this appeal. The issues as stated concern whether plaintiff is entitled to the full contract price of the vehicle purchased by Miller and whether the trial court properly awarded damages to plaintiff. Miller did not file a cross-appeal.

On April 19, 1976, Miller executed a purchase order to buy a 1976 Dodge Royal Monaco station wagon from plaintiff for $5,677. The order was submitted to Chrysler Corporation (Chrysler) for special equipment, including a heavy trailer towing package with extra large tires. Plaintiff received an invoice from Chrysler pursuant to Miller's order; the invoice indicated that the spare tire was omitted from the delivery and would be shipped later.

On May 28, 1976, the specially ordered station wagon was picked up by Miller. Miller drove the

car to a nearby expressway and exchanged cars with his wife. He drove the old car to work, and she drove the new car home. Upon getting the new vehicle home, Mrs. Miller discovered that the spare tire was missing. Miller called plaintiff the next day and spoke to Donald Diem, a salesman, about the missing spare tire. Both persons were distraught at the time of the call. Diem was under stress due to the serious surgery his wife was about to undergo. Diem offered no explanation for the missing spare tire but offered his own spare tire which turned out to be the wrong size. Miller told Diem that he would stop payment on the money orders unless he received the tire. Miller stopped payment on the two money orders, parked the vehicle in front of his home, and advised Diem to pick up the vehicle.

The tire was not delivered with the vehicle when it was received by plaintiff from the manufacturer because of a national tire shortage due to a labor strike. When the tire arrived, a notice was sent to Miller informing him of the tire's arrival and requesting that he make an appointment for its mounting on the vehicle's spare wheel located in the vehicle. There was no dispute that Miller was entitled to five tires with the purchase of the car.

On the day Miller picked up the car, he executed an application for a Michigan title. Plaintiff made application to the Secretary of State for a new title, license plates and a certificate of registration in the name of the purchaser. After the parties executed the application for Michigan title, a temporary ten-day registration sticker was affixed to the vehicle. After the sticker had expired, the car was towed from in front of Miller's home

by the St. Clair police department for storage in the Kuhn Bros. dealership in St. Clair. Defendant refused to accept the license plates when they were sent to him.

According to the trial court's opinion, the parties agreed that defendant Miller had made a valid acceptance of the station wagon under § 2606 of the Uniform Commercial Code (UCC), MCL 440.2606; MSA 19.2606. Their dispute concerned whether Miller's revocation of acceptance was valid under MCL 440.2608; MSA 19.2608, the section providing that a buyer may revoke acceptance of a commercial unit where the nonconformity "substantially impairs its value to him".

The trial court noted, in interpreting this section of the code, that the court in *Fargo Machine & Tool Co v Kearney & Trecker Corp,* 428 F Supp 364 (ED Mich, 1977), utilized a modified standard in determining substantial impairment by making it a factual question to be determined by objective evidence rather than the buyer's personal position. The trial court ruled that the missing spare tire did not substantially impair the value of a new automobile under either the objective or the subjective test in this case and that the defendant wrongfully revoked acceptance.

Although we note plaintiff's issues on appeal are limited to damages and Miller has not filed a cross-appeal, the trial court's determination is reviewed.

In *Zabriskie Chevrolet, Inc v Smith,* 99 NJ Super 441; 240 A2d 195 (1968), the automobile became inoperable 7/10 of a mile and minutes after leaving the dealer's showroom. The disposi-

tion of *Zabriskie* was premised on the finding that there was no acceptance. The facts in *Zabriskie* are clearly distinguishable on the basis that the car was inoperable, whereas here the sale nonconformity was the temporary absence of a spare tire due to a nationwide strike in the tire industry.

A buyer may properly revoke acceptance of a commercial unit where the nonconformity substantially impairs its value. The existence of such nonconformity depends on the facts and circumstances of each case. *Jorgensen v Pressnall,* 274 Or 285; 545 P2d 1382 (1976). The determination of substantial impairment is made from an objective view or from the buyer's subjective view, considering the particular needs and circumstances. See White & Summers, Uniform Commercial Code (2d ed), § 8-3, p 308, and MCL 440.2608, comment 2; MSA 19.2608, comment 2. The objective approach was utilized in *Fargo Machine & Tool Co.* In *Jorgensen,* both the objective and subjective tests were used in the determination.

The trial judge determined that the missing spare tire did not constitute a substantial impairment in value under either the subjective or objective test.

The purpose of the requirement of substantial impairment of value is to preclude revocation for trivial defects or defects which may be easily corrected. *Rozmus v Thompson's Lincoln-Mercury Co,* 209 Pa Super 120; 224 A2d 782 (1966).

The trial judge's determination that the temporarily missing spare tire did not constitute a substantial impairment in value under either the subjective or objective test was not clearly errone-

ous. We affirm the trial court's finding in that regard.

Having determined that Miller wrongfully revoked acceptance in this case, the trial court found that the vehicle could have been resold on or about September 1, 1976, for $1,000 less than the sales price to Miller and, therefore, that this is the amount of damages plaintiff is entitled to recover.

The trial court stated in its opinion:

"Since the defendant wrongfully revoked acceptance in this case, it must be determined what the plaintiff's proper measure of damages will be under the commercial code, as seller's remedies are set forth in MCL 440.2703; MSA 19.2703. The applicable remedies to plaintiff where delivery and acceptance has been made where the buyer subsequently revokes acceptance are resale and recovery of damages (provided in MCL 440.2706) or an action for price and damages (MCL 440.2709)."

MCL 440.2703; MSA 19.2703 provides:

"Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (section 2612), then also with respect to the whole undelivered balance, the aggrieved seller may

*   *   *

"(d) resell and recover damages as hereafter provided (section 2706);

"(e) recover damages for nonacceptance (section 2708) or in a proper case the price (section 2709); *  *  *"

The trial court further found:

"An implied duty on the part of the seller arose to retain the property and hold it for resale. This would not be an illegal act. The spirit of the Code is that where possible one must mitigate his damages."

Under MCL 257.217(b); MSA 9.1917(2), plaintiff was mandated to transfer title to the vehicle sold to Miller. The transfer was effected, and title and registration to the vehicle was placed in the name of Miller.

The Michigan Vehicle Code governs transfer of ownership of vehicles and thus pre-empts the Uniform Commercial Code. In *Messer v Averill,* 28 Mich App 62; 183 NW2d 802 (1970), *lv den* 384 Mich 808 (1971), the Court, in dealing with the conflict between the Michigan Vehicle Code and the UCC, held that the Michigan Vehicle Code governs over the UCC. The *Messer* Court cited *Heims v School Dist No 6 of Davison Twp,* 253 Mich 248, 251; 234 NW 486 (1931), where it was stated:

" '[T]hat where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision, especially when such general and special acts or provisions are contemporaneous, as the legislature are not presumed to have intended a conflict.' "

The trial court stated that "an implied duty on the part of the seller arose to retain the property and hold it for resale". Miller stopped payment on the money orders, parked the vehicle in front of his home and advised plaintiff to pick up the vehicle. Plaintiff did not have a security interest or

lien on the vehicle. The vehicle was registered and titled in Miller's name. Based on the record, plaintiff could not have transferred good title, contrary to the trial court's opinion.

MCL 440.2709; MSA 19.2709 provides:

"(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price

"(a) of goods accepted * * *

"(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing."

Clearly under MCL 440.2709(1)(b); MSA 19.2709(1)(b), the circumstances in this case are such that any effort to sell the vehicle would be unavailing.

MCL 440.1106(1); MSA 19.1106(1) states that the "remedies provided by this act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed". See, also, *Allen v Michigan Bell Telephone Co,* 61 Mich App 62; 232 NW2d 302 (1975), *lv den* 395 Mich 793 (1975).

Under MCL 440.2708(2); MSA 19.2708(2), where the measure of damages is inadequate to put the seller in as good a position as performance would have done, the seller's measure of damages is based upon his lost profits in connection with the particular sale.

Notwithstanding the trial court's finding that plaintiff was entitled to recover damages under §§ 2706 or 2709, the trial court erroneously found that plaintiff's remedies were to be awarded only under § 2706 and proceeded to take further proofs

in order to determine the amount of plaintiff's damages.

The evidentiary hearing was held on July 27, 1980, more than four years after the sale and delivery took place. The proofs were limited to evidence of the resale value of the 1976 Dodge in question on or about September 1, 1976.

The trial court in its supplemental opinion ruled:

"The testimony offered indicated that the value was either $1,000.00 less than dealer's cost or $1,000.00 less than the sales price. Dealer's cost is $5,265.43 and the sales price is $5,697.00. It is the finding of the court that the vehicle would have been resold for $1,000.00 less on or about September 1, 1976 than the sales price to defendant Miller and therefore this is the amount of damages the plaintiff is entitled to."

It is not disputed that plaintiff sold Miller a car for $5,697; that Miller paid for the car in full with two money orders; that Miller took delivery of the car; that Miller stopped payment on the money orders which were tendered in payment of the car; that Miller wrongfully revoked acceptance and breached his contract.

Because plaintiff is entitled to the full contract price of $5,697 for the vehicle purchased by Miller, the judgment of the trial court relating to damages is clearly erroneous and set aside, and plaintiff is awarded the contract price.

H. E. DEMING, J. *(dissenting).* I respectfully dissent.

The majority opinion centers on two factors: first, it is asserted that the fact that the defendant has filed no cross-appeal is somehow relevant to the plaintiff's right to recover and, second, the

assertion that the provisions of the Michigan Vehicle Code regarding title to the automobile in question, MCL 257.217(b); MSA 9.1917(2), controls the outcome here. I do not agree.

To begin with, I do not accept the finding by the trial court that Mr. Miller accepted the vehicle within the meaning of the Uniform Commercial Code. MCL 440.2606; MSA 19.2606. The parties certainly did not agree on this point and there is absolutely nothing in the record which would support such a finding.

The UCC is very plain concerning acceptance:

"Sec. 2606. (1) Acceptance of goods occurs when the buyer

"(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

"(b) fails to make an effective rejection (subsection (1) of section 2602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

"(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him."

Because acceptance is a term of art as it is used in the UCC, and because acceptance has broad legal ramifications, including the duty to pay for the goods, MCL 440.2607(1); MSA 19.2607(1), the finding of the trial court was clearly erroneous and should be reversed. As one notes, taking delivery is not acceptance because the UCC provides that the buyer has a reasonable time to inspect prior to accepting within the meaning of the code. MCL 440.2606(1), subds (a), (b); MSA 19.2606(1), subds (a), (b).

I disagree with the majority's assertion that the defendant's failure to file a cross-appeal somehow prejudices the defendant. To the contrary, the defense position was, and continues to be, that Miller owes plaintiff nothing because Mr. Miller's rejection of the nonconforming automobile was proper. Consistent with the Court of Appeals duty to do justice, GCR 1963, 820, failure to cross-appeal should have no bearing on this case, where consideration of defendant's position is necessary to a proper determination of the issue raised. See, *e.g.*, *Brown v Considine*, 108 Mich App 504, 507; 310 NW2d 441 (1981). Moreover, the plaintiff's right to the relief it seeks, or to any relief, depends not on the filing of a cross-appeal, but on the facts surrounding defendant's rejection of the car.

The right to reject nonconforming goods prior to acceptance is nearly absolute. The UCC plainly and unequivocally rejects the notion of substantial compliance by a seller, insisting on a rule of perfect tender. MCL 440.2601; MSA 19.2601. The UCC limits the perfect tender rule only by express delineation found in § 2-612, MCL 440.2612; MSA 19.2612, pertaining to installment contracts and §§ 2-718, MCL 440.2718; MSA 19.2718, and 2-719, MCL 440.2719; MSA 19.2719, which allow contractual limitations on remedies.

In some cases, the UCC also limits a buyer's right to reject for nonconformity. Section 2-508, MCL 440.2508; MSA 19.2508, gives the seller a right to cure the nonconforming defect. Here the buyer asked for, then demanded a cure, but was met with refusal, then a claim that cure was not possible because of a tire strike. The UCC places the burden of cure on the seller, not the buyer, MCL 440.2508(1); MSA 19.2508(1). Failure to cure within a reasonable time is a risk of the seller, not

the risk of the buyer. I conclude that this risk is one the plaintiff chose to take.

Since the majority opinion speaks to the matter of an acceptance, this I will address. If there has been an acceptance, it may be revoked for reasons found in § 2-608, MCL 440.2608; MSA 19.2608. At issue is whether the missing spare tire constituted a substantial impairment to the value of the automobile. The majority cites *Rozmus v Thompson's Lincoln-Mercury Co,* 209 Pa Super 120; 224 A2d 782 (1966), for the proposition that § 2-608 precludes revocation after acceptance for trivial matters that are easily corrected. I accept that as a valid statement of the law, however, in this case, the missing tire was not trivial or unimportant to defendant Miller. The dealer had specific knowledge of the buyer's requirement of a spare tire, and a specific good was ordered. Therefore, the lack of such tire was not trivial.

Functional tires, including an adequate spare, are an integral part of the safety equipment of every automobile purchased, anywhere. As I pointed out in my original opinion, one would be foolish or suicidal, in light of recent events on Detroit area expressways, to venture forth in an improperly equipped automobile. Since there was no acceptance on the part of this buyer within the UCC meaning of that term, I would hold § 2-608, MCL 440.2608; MSA 19.2608, to be inapplicable to this case.

Also at issue is the propriety of defendant's rejection. MCL 440.2602; MSA 19.2602 requires a nonmerchant buyer who has rightfully rejected goods to inform the seller of the fact of rejection. Thereafter, the buyer has no further obligation to goods rightfully rejected. MCL 440.2602(2)(c); MSA 19.2602(2)(c). The duty of the seller to remove or

repossess the nonconforming goods is universally recognized. *Presto Mfg Co, Inc v Formetal Engineering Co,* 46 Ill App 3d 7; 360 NE2d 510 (1977); *Graybar Electric Co v Shook,* 283 NC 213; 195 SE2d 514 (1973); *Garfinkel v Lehman Floor Covering Co,* 60 Misc 2d 72; 302 NYS2d 167 (1969). I find that defendant's method of notice, the telephone, was appropriate under these circumstances. There is no dispute concerning the unequivocal nature of Mr. Miller's rejection of the automobile or the reason for the rejection. Moreover, there is no doubt that Mr. Miller did not use the car after he told the plaintiff's agent to come and pick it up. The cases holding that oral notice is not sufficient are not applicable here. See, *e.g., Southeastern Steel Co, Inc v Burton Block & Concrete Co, Inc,* 273 SC 634; 258 SE2d 888 (1979). Rather, I would opt for the UCC rule that any notice must be "reasonable"—a notice that reasonably tells the seller of the fact of rejection and the reason therefor. *G & H Land & Cattle Co v Heitzman & Nelson, Inc,* 102 Idaho 204, 209; 628 P2d 1038 (1981); *Jacob Hartz Seed Co, Inc v E R Coleman,* 271 Ark 756, 758-759; 612 SW2d 91 (1981).

I would hold that if there was an acceptance, and I think that there was not, then Miller's rejection was both appropriate and timely.

Finally, the majority relies on *Messer v Averill,* 28 Mich App 62; 183 NW2d 802 (1970), *lv den* 384 Mich 808 (1971), for the proposition that the provisions of the Michigan Vehicle Code, MCL 257.217(b); MSA 9.1917(2), control where issues of title are present. *Messer* concerns a tort liability problem where title, or more particularly ownership, is important and, in most cases, determinative of the outcome of the issue of tort liability. It is my opinion that the holding of *Messer* doesn't

apply where tort liability is not at issue or a third party is not involved.

The UCC specifically rejects any concept of title in its allocation of loss risks. MCL 440.2510; MSA 19.2510. The party who breaches the contract bears the risk of loss. This is categorically true, even where, as here, the buyer has the goods. MCL 440.2510(2); MSA 19.2510(2). Moreover, the seller bears the risk of damage or loss for its refusal to come to Miller's home to pick up the rejected vehicle. It is undisputed that on the morning after taking delivery of the station wagon, Mr. Miller phoned the dealership, discussed the absence of the spare tire, and, after receiving no satisfactory explanation, orally rejected the automobile as not conforming to the purchase contract. He told the dealer's agent to come and pick up the car because he refused to drive it at all without a spare tire.

While it may be argued that the seller was precluded from prompt resale of the automobile by the impact of the provisions of the Michigan Vehicle Code, there is a procedure for restoration of title in the seller which is available to persons such as this plaintiff.

The majority concludes that the plaintiff-seller is entitled to the full purchase price of the automobile. This result is not only unconscionable on these facts but wrong as a matter of law. It was the seller who breached the contract. It has no right to damages whatsoever on its own breach because the law gives it no such right, absent a wrongful rejection on the part of the buyer.

In summary, I conclude that Mr. Miller never accepted this automobile. More than that, he made a reasonable, timely demand that the nonconformity be cured. When, for whatever reason, the seller could not or would not cure the nonconformity,

Miller parked the rejected car and told the seller to come and take it away. The seller did nothing. It should bear the loss.

I would reverse.