## COLONIAL DODGE, INC v MILLER

Docket No. 70660. Argued April 5, 1984 (Calendar No. 14).—Decided
    December 28, 1984. Released January 17, 1985.

Colonial Dodge, Inc., brought an action in the Macomb Circuit
    Court against Clarence R. Miller, seeking the purchase price of
    an automobile purchased by the defendant. The defendant had
    attempted to revoke acceptance of the vehicle after discovering
    that the spare tire was missing. The court, Kenneth N. San-
    born, J., entered judgment for the plaintiff. The Court of
    Appeals, V. J. Brennan and Deming, JJ. (Cynar, P.J., dissent-
    ing), reversed, concluding that the defendant never accepted the
    vehicle, but on rehearing, the Court, Cynar, P.J., and V. J.
    Brennan, J. (Deming, J., dissenting), noting that the parties
    had agreed there was acceptance in the trial court, affirmed in
    an opinion per curiam (Docket No. 55966). The defendant
    appeals.

In an opinion by Justice Kavanagh, joined by Chief Justice
    Williams and Justices Levin and Brickley, the Supreme Court
    *held:*

Failure of the plaintiff to include a spare tire, under the
    circumstances of the case, was a substantial impairment in the
    value of the vehicle to the defendant, enabling the defendant to
    revoke his acceptance.

1. Under the Uniform Commercial Code, revocation of accep-
    tance is possible only where the nonconformity substantially
    impairs the value of the goods to the buyer. The test is not
    what the seller had reason to know at the time of contracting,
    but whether the nonconformity is such as will in fact cause a
    substantial impairment of value to the buyer though the seller

---

REFERENCES FOR POINTS IN HEADNOTES

[1-6] 67 Am Jur 2d, Sales § 710.

What constitutes "substantial impairment" entitling buyer to re-
    voke his acceptance of goods under UCC § 2-608(1). 98 ALR3d
    1183.

Construction and effect of UCC Art 2, dealing with sales. 17 ALR3d
    1010.

[2, 4-6] 67 Am Jur 2d, Sales § 135.

[3] Time for revocation of acceptance of goods under UCC § 2-608(2).
    65 ALR3d 354.

had no advance knowledge as to the buyer's particular circumstances. In order to give effect to the statute, a buyer must show that the nonconformity has a special devaluing effect on him and that his assessment of it is factually correct.

2. In this case, the defendant's concern with safety is evidenced by the fact that he ordered a special package which included special tires. The defendant's occupation demanded that he travel extensively, and often in the early morning hours. The defendant testified that without a spare he would be helpless until morning business hours. The dangers attendant upon a stranded motorist are common knowledge, and the defendant's fears are not unreasonable. Under the circumstances, the failure to include the spare tire as ordered constituted a substantial impairment in value to the defendant.

3. The fact that the defendant did not discover the nonconformity before he accepted the vehicle does not preclude his revocation. The spare tire was located under a fastened panel, concealed from view. This location satisfies the requirement of the code that the nonconformity be difficult to discover. Likewise, the defendant notified the plaintiff of his revocation within a reasonable time of the discovery of the nonconformity, and the fact that he did not sign over title to the plaintiff was not a failure to revoke. The defendant had no duty to sign over title absent a request from the plaintiff. His notice to the plaintiff and the holding of the car pending the plaintiff's disposition was sufficient under the statute, at least in the absence of evidence that he refused a request by the plaintiff to sign over title. Nor did the defendant abandon the vehicle, and thereby deny the plaintiff an opportunity to cure the nonconforming tender. The defendant held the vehicle and gave notice to the plaintiff in a proper fashion; he had no further duties.

Reversed.

Justice Ryan, dissenting, stated that the absence of a spare tire was a temporary deficiency that could easily be remedied and could not be elevated to the level of a substantial impairment of value on the ground that the nonconformance was worrisome, aggravating, or potentially dangerous.

Justice Boyle, joined by Justice Cavanagh, dissenting, stated that the defendant did not properly revoke acceptance of the vehicle. Revocation is proper where a nonconformity substantially impairs value, and revocation for trivial defects or defects easily corrected is precluded. The determination that the temporarily missing spare tire was not a substantial impairment was not clearly erroneous.

121 Mich App 466; 328 NW2d 678 (1982) reversed.

OPINION OF THE COURT

1. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPT-
   ANCE.

   A buyer may revoke acceptance of goods that do not conform to
   contract where the nonconformity substantially impairs the
   value of the goods to him; the test is not what the seller had
   reason to know at the time of contracting, but whether the
   nonconformity is such as would cause substantial impairment
   of value to the buyer although the seller had no advance
   knowledge with respect to the buyer's circumstances (MCL
   440.2608; MSA 19.2608).

2. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPT-
   ANCE.

   Failure to provide a spare tire in an automobile as specially
   ordered by a buyer was a substantial impairment of value to
   the buyer where the buyer was required to travel extensively
   during early morning hours and his fears that the lack of a
   spare would leave him stranded and helpless in case of a flat
   tire were not unreasonable (MCL 440.2608; MSA 19.2608).

3. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPT-
   ANCE.

   Failure to discover a nonconformity of goods to a contract before
   acceptance does not preclude revocation of acceptance where
   the nonconformity was difficult to discover (MCL 440.2608[1][b];
   MSA 19.2608[1][b]).

4. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPT-
   ANCE.

   Absent a request from the seller, a buyer had no duty to sign
   over title to an automobile to the seller after notifying the
   seller of his revocation of acceptance and holding the automo-
   bile for a time sufficient to permit the seller to remove it (MCL
   440.2602[1][b], [c], 440.2608[3]; MSA 19.2602[1][b], [c],
   19.2608[3]).

DISSENTING OPINION BY RYAN, J.

5. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPT-
   ANCE.

   *The absence of a spare tire was a temporary deficiency that could
   easily be remedied and could not be elevated to the level of a
   substantial impairment of value on the ground that the non-
   conformance was worrisome, aggravating, or potentially dan-
   gerous (MCL 440.2608; MSA 19.2608).*

6. SALES — UNIFORM COMMERCIAL CODE — REVOCATION OF ACCEPT-
    ANCE.

*The failure by a seller to provide a spare tire in an automobile
was not a substantial impairment of value to the buyer, but
was a trivial defect or a defect easily corrected, precluding
revocation of acceptance (MCL 440.2608; MSA 19.2608).*

*Anthony B. Roshak* for the plaintiff.

*Monash & Monash, P.C.* (by *Richard A. Monash* and *Harold R. Goldberg),* for the defendant.

Amicus Curiae:

*Colombo & Colombo* (by *Lawrence F. Raniszeski)* for Detroit Automobile Dealers Association.

KAVANAGH, J. This case requires the Court to decide whether the failure to include a spare tire with a new automobile can constitute a substantial impairment in the value of that automobile entitling the buyer to revoke his acceptance of the vehicle under MCL 440.2608; MSA 19.2608.

We hold it may and reverse.

On April 19, 1976, defendant Clarence Miller ordered a 1976 Dodge Royal Monaco station wagon from plaintiff Colonial Dodge which included a heavy-duty trailer package with extra wide tires.

On May 28, 1976, defendant picked up the wagon, drove it a short distance where he met his wife, and exchanged it for her car. Defendant drove that car to work while his wife returned home with the new station wagon. Shortly after arriving home, Mrs. Miller noticed that their new wagon did not have a spare tire. The following morning defendant notified plaintiff that he insisted on having the tire he ordered immediately, but when told there was no spare tire then avail-

able, he informed the salesman for plaintiff that he would stop payment on the two checks that were tendered as the purchase price, and that the vehicle could be picked up from in front of his home. Defendant parked the car in front of his home where it remained until the temporary ten-day registration sticker had expired, whereupon the car was towed by the St. Clair police to a St. Clair dealership. Plaintiff had applied for license plates, registration, and title in defendant's name. Defendant refused the license plates when they were delivered to him.

According to plaintiff's witness, the spare tire was not included in the delivery of the vehicle due to a nation-wide shortage caused by a labor strike. Some months later, defendant was notified his tire was available.

Plaintiff sued defendant for the purchase price of the car. On January 13, 1981, the trial court entered a judgment for plaintiff finding that defendant wrongfully revoked acceptance of the vehicle. The Court of Appeals decided that defendant never accepted the vehicle under MCL 440.2606; MSA 19.2606 of the Uniform Commercial Code and reversed. 116 Mich App 78, 85; 322 NW2d 549; 34 UCCRS 123 (1982). On rehearing, the Court of Appeals, noting the trial court found the parties had agreed that there was a valid acceptance, affirmed the trial court's holding that there was not a substantial impairment in value sufficient to authorize defendant to revoke acceptance of the automobile.

Defendant argues that he never accepted the vehicle under MCL 440.2606; MSA 19.2606, claiming mere possession of the vehicle is not sufficient according to the UCC. Plaintiff contends defendant did accept the vehicle by executing an application for Michigan title and driving the vehicle away

from the dealership. The trial court stated "[t]he parties agree that defendant Miller made a valid acceptance of the station wagon under section 2.606 of the Uniform Commercial Code * * *."[1]

We are not persuaded that, had the matter been contested in the trial court, a finding of acceptance would be warranted on this record. However, since defendant did not submit the question to the trial judge, but in effect stipulated to acceptance, we will treat the matter as though there was acceptance.

We are satisfied defendant made a proper revocation under MCL 440.2608(1)(b); MSA 19.2608(1)(b). This section reads:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

"(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and

[1] The basis for the statement by the trial court appears to be the argument in defendant's brief to the trial court, which stated: "Mr. Miller contends that the provisions of MCLA 440.2608(1) and (b) have been clearly met due to the fact that he accepted the vehicle in question * * *." The first opinion of the Court of Appeals, 116 Mich App 78, 85, held that the trial court clearly erred in finding acceptance. However, on rehearing the plaintiff pointed out the statement cited above and the Court of Appeals found a valid acceptance. 121 Mich App 466; 328 NW2d 678 (1982).

duties with regard to the goods involved as if he had rejected them."

Plaintiff argues the missing spare tire did not constitute a substantial impairment in the value of the automobile, within the meaning of MCL 440.2608(1); MSA 19.2608(1). Plaintiff claims a missing spare tire is a trivial defect, and a proper construction of this section of the UCC would not permit defendant to revoke under these circumstances. It maintains that since the spare tire is easy to replace and the cost of curing the nonconformity very small compared to the total contract price, there is no substantial impairment in value.

However, MCL 440.2608(1); MSA 19.2608(1) says "[t]he buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value *to him* * * *." (Emphasis added.) Number two of the Official Comment to MCL. 440.2608; MSA 19.2608 attempts to clarify this area. It says that

"[r]evocation of acceptance is possible only where the nonconformity substantially impairs the value of the goods to the buyer. For this purpose the test is not what the seller had reason to know at the time of contracting; the question is whether the nonconformity is such as will in fact cause a substantial impairment of value to the buyer though the seller had no advance knowledge as to the buyer's particular circumstances."

We cannot accept plaintiff's interpretation of MCL 440.2608(1); MSA 19.2608(1). In order to give effect to the statute, a buyer must show that the nonconformity has a special devaluing effect on him and that the buyer's assessment of it is factually correct. In this case, the defendant's concern with safety is evidenced by the fact that he ordered the special package which included special tires. The

defendant's occupation demanded that he travel extensively, sometimes in excess of 150 miles per day on Detroit freeways, and often in the early morning hours. Mr. Miller testified that he was afraid of a tire going flat on a Detroit freeway at 3 a.m. Without a spare, he testified, he would be helpless until morning business hours. The dangers attendant upon a stranded motorist are common knowledge, and Mr. Miller's fears are not unreasonable.

We hold that under the circumstances the failure to include the spare tire as ordered constituted a substantial impairment in value to Mr. Miller, and that he could properly revoke his acceptance under the UCC.

That defendant did not discover this nonconformity before he accepted the vehicle does not preclude his revocation. There was testimony that the space for the spare tire was under a fastened panel, concealed from view. This out-of-sight location satisfies the requirement of MCL 440.2608(1)(b); MSA 19.2608(1)(b) that the nonconformity be difficult to discover.

MCL 440.2608(2); MSA 19.2608(2) requires that the seller be notified of the revocation of acceptance and that it occur within a reasonable time of the discovery of the nonconformity. Defendant notified plaintiff of his revocation the morning after the car was delivered to him. Notice was given within a reasonable time.

Plaintiff argues that defendant failed to effectively revoke acceptance because he neglected to sign over title to the car to plaintiff.

Defendant, however, had no duty to sign over title absent a request from plaintiff that he do so. Under MCL 440.2608(3); MSA 19.2608(3), "[a] buyer who so revokes has the same rights and duties with regard to the goods involved as if he

had rejected them." And a buyer who has rejected goods in his possession "is under a duty * * * to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but the buyer has no further obligations with regard to the goods * * *." MCL 440.2602(2)(b) and (c); MSA 19.2602(2)(b) and (c). Defendant's notice to plaintiff and holding of the car pending seller's disposition was sufficient under the statute, at least in the absence of evidence that defendant refused a request by the plaintiff to sign over title.

Plaintiff contends defendant abandoned the vehicle, denying it any opportunity to cure the nonconforming tender as prescribed in MCL 440.2508; MSA 19.2508. We find that defendant's behavior did not prevent plaintiff from curing the nonconformity. Defendant held the vehicle and gave notice to the plaintiff in a proper fashion; he had no further duties.

Reversed.

WILLIAMS, C.J., and LEVIN and BRICKLEY, JJ., concurred with KAVANAGH, J.

RYAN, J. I dissent.

While I agree that MCL 440.2608(1)(b); MSA 19.2608(1)(b) establishes what is essentially a subjective test to measure the buyer's authority to revoke an acceptance of nonconforming goods, the requisite impairment of the value of the goods to the buyer must be *substantial.* It is not sufficient that the nonconformance be worrisome, aggravating, or even potentially dangerous. It must be a nonconformity which diminishes the value of the goods to the buyer to a substantial degree. The mere possibility that the new car in this case would have a flat tire in the early hours of the

morning in an unsafe area of the City of Detroit, leaving its driver with no spare tire, although real, is unlikely. In all events, it is not a possibility which can reasonably be said to elevate the absence of a spare tire, a temporary deficiency easily remedied, to the level of a "substantial impairment" of the value of the new automobile for its ordinary use as a motor vehicle.

Consequently, I would reverse the judgment of the Court of Appeals and affirm the finding of the trial court on this issue.

BOYLE, J. *(dissenting).* I disagree with the conclusion reached by the majority for the reasons stated in the majority opinion in the Court of Appeals. 121 Mich App 466, 473; 328 NW2d 678 (1982). I agree with the analysis of the Court of Appeals majority of the law of substantial impairment and its application to the facts in this case. As succinctly summarized:

"A buyer may properly revoke acceptance of a commercial unit where the nonconformity substantially impairs its value. The existence of such nonconformity depends on the facts and circumstances of each case. *Jorgensen v Pressnall,* 274 Or 285; 545 P2d 1382 (1976). The determination of substantial impairment is made from an objective view or from the buyer's subjective view, considering the particular needs and circumstances. See White & Summers, Uniform Commercial Code (2d ed), § 8-3, p 308, and MCL 440.2608, comment 2; MSA 19.2608, comment 2. The objective approach was utilized in *Fargo Machine & Tool Co [v Keaney & Trecker Corp,* 428 F Supp 364 (ED Mich, 1977)]. In *Jorgensen,* both the objective and subjective tests were used in the determination.

\* \* \*

"The purpose of the requirement of substantial impairment of value is to preclude revocation for trivial defects or defects which may be easily corrected. *Roz-*

*mus v Thompson's Lincoln-Mercury Co,* 209 Pa Super 120; 224 A2d 782 (1966).

"The trial judge's determination that the temporarily missing spare tire did not constitute a substantial impairment in value under either the subjective or objective test was not clearly erroneous." *Id.,* pp 473-474.

Therefore, I do not agree that defendant Miller properly revoked acceptance of the vehicle, and I would affirm the trial court's finding on that issue.

CAVANAGH, J., concurred with BOYLE, J.